THE RECORDING DEVICES CO., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

[Cite as Recording Devices v. Porterfield (1972), 30 Ohio St. 2d 208.]

(No. 71-666—Decided May 31, 1972.)

*Messrs. Glander, Brant, Ledman & Newman,* and *Mr. C. Emory Glander,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Dwight C. Pettay, Jr.,* and *Mrs. Maryann B. Gall,* for appellee.

*Per Curiam.* This is an appeal from a decision of the Board of Tax Appeals which affirmed an assessment of sales taxes by the Tax Commissioner against appellant.

Appellant is engaged in a business, whereby under contracts with its customers, appellant furnishes and in-

stalls time lock and recording devices on the doors of customer's premises. Each lock furnished and installed by appellant has several keys of variable lengths. The customer then furnishes to certain of its personnel individual keys, each of which, when used to lock or unlock the customer's door, causes a record of the time and identity of the particular key to be made on the tape embodied in the locking device. Usually once a week appellant's employee services the device and removes the tape contained therein. At appellant's office the tape is decoded and weekly reports are made to the customer of the time the door was locked and unlocked and by which employee. The customer cannot gain access to the interior of the device and he is responsible for damages to the device, excepting ordinary wear and tear.

In *Recording Devices* v. *Bowers* (1963), 174 Ohio St. 518, this court held that appellant's receipt of monthly charges was subject to the Ohio Sales Tax under R. C. 5739.01(B) which states:

" 'Sale' and 'selling' includes all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be transferred * * *."

Although the lock and recording device involved in this case is substantially the same as it was in 1963, appellant asserts that, by virtue of a change in its contracts with customers, and by reason of this court's decision in *American District Telegraph Co.* v. *Porterfield* (1968), 15 Ohio St. 2d 92, and *Machinery Moving* v. *Porterfield* (1971), 26 Ohio St. 2d 99, the decision of the Board of Tax Appeals in the instant case is unreasonable and unlawful and should be reversed. The contract change upon which appellant relies now reads:

"It is hereby agreed that The Recording Devices Co. neither sells nor leases the Dayton Time Lock equipment to the subscriber; that the subscriber is granted no right to possess or use said equipment; and that the entire consideration paid by the subscriber shall be for the right to

receive the weekly reports prepared by The Recording Devices Co."

Appellant contends that the sales tax should not be assessed because neither title nor possession is transferred, and no license to use or consume is granted its customers. Appellant's authority for this position is *Federal Sign & Signal Corp.* v. *Bowers* (1961), 172 Ohio St. 161. This court held, in *American District Telegraph* v. *Porterfield, supra*, that *Federal Sign* "did not turn upon the inherent limits of the word, 'possession,' as used in Section 5739.01(B), Revised Code, but rather upon the applicability or nonapplicability of a then existing rule excluding taxability in a case involving outdoor advertising signs." Under the fact situation in the case at bar, no such exclusionary rule exists, and we do not find the statement in the contract regarding "possession" to be determinative of the issue presented herein.

An analysis of the record in this case reveals that the basic facts are identical to the facts presented in the previous case. (174 Ohio St. 518.) In that case, at page 521, it was said that:

"The taxpayer claims to be selling a service. It retains title to the time lock and rents it to the customer for a monthly consideration. * * * If the device was damaged by the taxpayer's customer, he was responsible, ordinary wear and tear excepted. It was attached to the customer's realty and was to be kept in working order by the taxpayer."

In that case, this court concluded that the taxpayer was not essentially rendering a personal service; that it was engaged in the rental of the devices; and that such rentals were not excepted from sales taxes. The modification of the language of the contract since the 1963 decision has not altered the factual situation one iota. *A fortiori*, such modification would not justify reversing the previous decision involving this appellant.

We come now to consider whether what this court said in *ADT*, *supra*, and *Machinery Moving*, *supra*, sup-

ports appellant's position that this court could reverse the decision of the Board of Tax Appeals without the necessity of overruling the court's previous decision in *Recording Devices.*

In *ADT*, we found that the tangible personal property installed, with respect to the central station contracts, was both economically and functionally inconsequential. Economically, the charge for the service was considerably larger than the value of the property, and, functionally, the manner in which this taxpayer received information of an abnormal situation at the subscriber's premises was inconsequential to the service it performed for its subscribers. However, this court held that the taxpayer gave its customers custody of the property for their use in guarding their premises, and that such type of custody fell within the general definition of possession.

Appellant contends that, because the value of the alarm devices in *ADT* averaged less than ten percent of the total amount charged customers, whereas in the instant case the total amount of the charge for equipment used is about 8.1 per cent, the transactions in this case are an even more inconsequential element, and therefore they should be exempt. We do not subscribe to that theory, because the economic-inconsequentiality test is not the sole measuring rod. We look as well to the function of the equipment.

The equipment involved in *ADT* did no more than send a signal to the taxpayer, who in turn sent its employees to safeguard the subscriber's property. The subscriber was not required to activate the signal, and he had selected a process, central station alarm, whereby he received far more benefit than merely having a signal sent.

In the case at hand, the recording device must be activated by the employees of the customer. The employees of the taxpayer do not become involved, other than in collecting the tape record made by the machine, deciphering it, and sending the decoded results to the subscriber. In addition to the substantial independent benefit of hav-

ing a lock on his door, the customer contracts to have a record made of how often and by whom the door was opened, and that record is made by the recording device itself, not by the personal service of the taxpayer. In this case, it is not the manner in which the record is made that is inconsequential, rather, it is the manner in which it is delivered to the customer that is inconsequential.

This same differentiation holds true in *Machinery Moving*, for the bins, which served no function other than to hold trash, were picked up regularly by employees of Machinery Moving, an act which could have been done even if the bins had been supplied by the customer itself. The service contracted for was the substantial personal service of removal of trash, not the providing of containers in which to place trash. Thus, the bins were an inconsequential part of that transaction.

While the activity in this case differs from the activity in *Bunker-Ramo* v. *Porterfield* (1970), 21 Ohio St. 2d 231, the language employed in R. C. 5739.01(B) holds true in each case. In *Bunker-Ramo*, O'Neill, C. J., writing for the court, said that "the activity which the appellee performs is a completely mechanized service. It is not a *personal* service transaction in the sense that there are no people engaged in serving directly the subscribers of appellee."

The service actually rendered by appellant in this case is the rental of a door lock which records the time and by whom the door is locked and unlocked. This is all done by the device itself. The picking up and decoding of the recorded tape is inconsequential compared with the actual use of the locking and recording device itself.

In re-affirming our position in *Bunker-Ramo*, we conclude that appellant's contention that its activities constitute a "personal service transaction" is a much broader, more comprehensive and a different definition of "personal service transaction" than was intended by the General Assembly in enacting the applicable statute of the Sales Tax Act.

"Personal service" means an act done personally by a particular individual; it is, in effect, an economic service involving either the intellectual or manual personal effort of an individual, not the saleable product of his skill. See 32 Words and Phrases, Supplement. The reading of the tape after removal from the device is not a personal effort, it is a saleable product of the rental of the device, and the usage thereof by the customer as a lock.

We adhere to our former decision (174 Ohio St. 518), rendered against appellant, and find the decision of the Board of Tax Appeals is both reasonable and lawful.

*Decision affirmed.*

O'NEILL, C. J., SCHNEIDER, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.

HERBERT, J., dissents upon the basis of *American District Telegraph Co.* v. *Porterfield* (1968), 15 Ohio St. 2d 92. See also *Federal Sign & Signal Corp.* v. *Bowers* (1961), 172 Ohio St. 161.