FEDERATED DEPARTMENT STORES, INC., APPELLANT AND
CROSS-APPELLEE, *v.* KOSYDAR, TAX COMMR., APPELLEE
and CROSS-APPELLANT.

[Cite as Federated Department Stores v. Kosydar (1976),
45 Ohio St. 2d 1.]

2

(No. 75-80—Decided January 7, 1976.)

*Mr. Stanley J. Bowers* and *Mr. Samuel E. Dyer,* for appellant and cross-appellee.

*Mr. William J. Brown,* attorney general, *Mr. John C. Duffy, Jr.,* and *Mrs. Maryann B. Gall,* for appellee and cross-appellant.

CORRIGAN, J. At issue in this case are two categories of tangible personal property claimed by appellant to be excepted from Ohio sales and use taxes, pursuant to R. C. 5739.01(B) and (E)(2). For purposes of this discussion, the tax in issue will be treated as sales tax, pursuant to R. C. 5741.02(C)(2).

## I.

The first category of goods assessed by the Tax Commissioner, and at issue herein, consists of advertising materials. These materials consist, in general, of radio and T. V. commercials, and free-lance artists' sketches used in newspaper and magazine compositions. The assessment

4

relating to radio and T.V. commercials consists specifically of tapes and films used to produce the commercials.

Appellant maintains that this property is the end product of an individual's personal or professional skills and is unsuitable for use by anyone other than the appellant. Appellant contends further that the property in question is an inconsequential part of the transaction, and, therefore, the transaction is a personal service, notwithstanding the evidence in the record to the effect that the appellant would not have paid the price but for the transfer of said property. We disagree.

It should be noted at the outset that R. C. Chapter 5739 taxes only tangible personal property. The so-called personal service exception in reality excepts from taxation that tangible personal property transferred as an inconsequential element of a personal service transaction.

This court, in *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, states the test for determining whether a "sale" of tangible personal property may be excepted from the sales tax by virtue of R. C. 5739.01(B). The first three paragraphs of the syllabus in *Accountant's, supra*, state:

"1. In determining whether a 'sale' of tangible personal property may be excepted from the sales tax by the last sentence of R. C. 5739.01(B), the proper test is to determine whether the transaction involves a consequential or inconsequential professional, insurance, or personal service. If the service rendered is inconsequential, the exception is not avaliable and the *entire* transaction is taxable. If a consequential service *is* rendered, then it must be ascertained whether the transfer of the tangible personal property was an inconsequential element of the transaction. If so, then none of the consideration paid is taxable.

"2. In determining whether a mixed transaction constitutes a consequential personal service transaction, a distinction must be made as to the *true object* of the transaction contract; that is, is the real object sought by the buyer the service *per se* or the property produced by the service.

"3. Where a transaction is mixed in such a manner that the tangible personal property transferred and the

service rendered are distinct consequential elements having a fixed and ascertainable relationship between the value of the property and the value of the service rendered so that both may be separately stated, there exist two separate transactions, and the one attributable to the sale of the tangible personal property is subject to taxation under R. C. 5739.01(B) while the other is not."

This court, in *Accountant's*, explained that once it has been concluded that a sale of tangible personal property has occurred, then the next step is to determine whether a consequential professional, insurance or personal service is involved. The court states, at page 132:

"To accomplish this, the Tax Commissioner, the Board of Tax Appeals, and this court, as necessary, must examine the *real object sought by the buyer, i. e.,* the service *per se* or the property produced by the service, and determine if it was the buyer's object to obtain an act done personally by an individual as an economic service involving either the intellectual or manual personal effort of an individual, or if it was the buyer's object to obtain only the saleable end product of some individual's skill. *Koch* v. *Kosydar, supra* (32 Ohio St. 2d 74)."

If the professional, insurance or personal service is inconsequential, then the exception cannot be available and the entire transaction is taxable.

Appellant relies upon *Columbus Coated Fabrics* v. *Porterfield* (1972), 30 Ohio St. 2d 307, for the proposition that where the item of tangible personal property transferred is an inconsequential element of the transaction, unsuitable for uses other than those intended by the purchaser and prepared at the request of a specific purchaser, the transaction is a personal service, notwithstanding the fact that the purchaser would not have paid the price but for the transfer of the property. We think this reliance is misplaced. This court, in *Columbus Coated Fabrics, supra,* recognized the fact that there exists no article fabricated by machine or handcrafted that is not the product of the exercise and application of individual ability and skill. The court, in its decision, pointed out that *Recording Devices* v. *Porterfield* (1972), 30 Ohio St. 2d 208, provided the

framework within which that case was to be decided.

*Recording Devices, supra,* at page 213, defined personal service as "an act done personally by a particular individual; it is, in effect, an economic service involving either the intellectual or manual personal effort of an individual, not the saleable product of his skill."

The court, in *Columbus Coated Fabrics, supra,* did not substitute the criteria relied upon by appellant in the present case for the true object of the transaction, but merely cited the record in that case that the property was suitable for other uses and was neither prepared at the request of, nor for the specific purchaser, as evidence of the purchaser's real object to acquire the property and not the services producing it.

In *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, this court held similar expenditures to advertising agencies for T. V. and radio commercials, sales brochures and photographs to be items of tangible personal property subject to taxation. The court based its holding on the finding of the Board of Tax Appeals that the taxpayers' main concern was to acquire possession of the films, commercials, radio tapes, brochures, photographs and annual reports. The court determined that the record established the taxpayers' intention to acquire materials to use in advertising, and that the personal property purchased was the real object sought by the buyers. The court added that the main function of the agencies was not to analyze, interpret, and present information to the taxpayers, but that the taxpayers paid a substantial consideration for their services, and it was unlikely that this would have occurred without receipt of the items in question.

In the present case, the Board of Tax Appeals found that "* * * the appellant was distinctly interested in the television commercials, photographs, radio tapes, advertising compositions and 'layouts.' The real object sought by the appellant in each of the transactions listed * * * was clearly the tangible personal property which it acquired for a consideration."

In appeals from the Board of Tax Appeals, this court's review is limited to a determination from the record as

to the reasonableness and lawfulness of the board's decision. *Citizen's Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53.

Our examination of the record before the Board of Tax Appeals indicates sufficient probative evidence that the appellant's real object in the transactions in question was to acquire possession of the radio and T. V tapes and films to use in advertising, rather than the service performed in producing them. In regard to such radio and T. V. tapes and films, the decision of the board is affirmed.

*II.*

In respect to the free-lance art work, the Board of Tax Appeals found that the transactions were personal service transactions. The board based this finding upon the fact that the appellant requested that the artists produce specific types of art work unusable for other than those purposes intended by the appellant. The payments of predetermined hourly fees to the artists, stated the board, was a payment for both the intellectual and manual skill of the individual artist and not for the art work itself. The board felt that transactions of this nature are not subject to sales and use taxes.

The board's finding that the free-lance artists' sketches were transferred as part of a personal service transaction was apparently based upon the testimony in the record that the sketches were specifically requested by the taxpayer, were unsuitable for uses other than those the taxpayer intended, and that the artists were paid an hourly fee for their services. As pointed out earlier in this decision, in commenting on the appellant's argument based upon *Columbus Coated Fabrics, supra* (30 Ohio St. 2d 307), those facts are evidence tending to show a real object to acquire the services of the artists. The record in this case, however, contains evidence to the effect that appellant usually specifies the type of sketch to be produced and the items to be involved in the sketch.

The testimony also definitely establishes the appellant's real object in hiring the artists is to acquire the sketches, themselves, so that the sketches may be turned over to the advertising department to be used in news-

paper or magazine compositions. The record clearly establishes an objective to acquire tangible personal property, and, pursuant to our decision in *Accountant's, supra,* the personal service rendered is an inconsequential element in the transaction. The decision of the Board of Tax Appeals is against the weight of the evidence and contrary to the standards established by this court in *Accountant's, supra.* The decision of the board as to the artists' sketches, the issue in the cross-appeal, is, therefore, reversed.

### III.

Appellant maintains, in its second proposition of law, that merchandise display fixtures, purchased by a person engaged in the business of making retail sales, are used directly in making such sales and are, therefore, excepted from sales and use taxes, notwithstanding the fact that they may also incidentally partition or separate areas of a mercantile establishment.

The items in question consist of portable partitions extending to ceiling height and the cornices, light fixtures and interior signs variously attached to them. The partitions, the record indicates, were constructed of lumber and plywood and served to separate various departments in the store. The partitions were frequently decorated with elaborate wallpaper, paneling, cornices, and signs. The shelving attached to these panels and used to display merchandise was not taxed. The record, including photographs of the panels or partitions, indicates the basic difference between discount stores and department stores. Both types of stores involve the same basic construction. Both types of stores are architecturally similar in that they are large square or rectangular shaped empty buildings. In the discount store, few, if any, walls are constructed in addition to the four basic walls. The interior is separated by low display shelves or racks. The department store, however, derives its name from the fact that merchandise display areas are divided and separated from each other by decorative ceiling height walls, panels or partitions. These divided areas are designated by decorative signs and separated for the convenience of customers. These panels, the record indicates, frequently function as walls for dres-

sing rooms and stock rooms. The panels are portable and can be used again in remodeling or changing a merchandise display. The appellant's witnesses stated that the primary purpose of these panels was to attractively display the appellant's merchandise. Appellant contends that these panels and associated cornices, light fixtures and signs constitute display systems or fixtures used primarily in making retail sales and are excepted from the definition of "retail sale," pursuant to R. C. 5739.01(E).

R. C. 5739.01(E) provides, in pertinent part:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

" * * *

"(2) * * * to use or consume the thing transferred * * * directly in making retail sales * * *."

R. C. 5739.01(P) provided during the audit period that " '[m]aking retail sales' " did not include " * * * the preliminary acts of promoting or soliciting the retail sales."

At the time of the audit in question, Rule TX-15-11, Rules of the Tax Commissioner, read as follows:

"Tangible personal property which is to be used or consumed directly in making retail sales may, when purchased by a person engaged in making retail sales, be purchased under a claim of exemption. Articles subject to such claim include show cases, equipment and shelves used to display merchandise for sale; store furniture and fixtures; supplies and equipment used in consummating retail sales; and equipment for use or consumption in storing or preserving goods and merchandise in the sales area.

"This exemption does not apply to equipment used for general heating of the sales area, to fuels for such equipment, to any other supplies not used directly in making retail sales or not specifically used in storing or preserving goods and merchandise in the sales area, to delivery equipment, nor to items used to promote or solicit retail sales. Examples of items to which the exemption would not apply include lumber, wall board and similar items used as partitions whether in the retail rooms, display windows or elsewhere; janitor and cleaning supplies, fans, decorative items, items used in offices, stock or delivery rooms,

outside signs, trucks or equipment used to deliver merchandise sold at retail, and advertising materials.

" 'Sales area' means any area in which retail sales are customarily made."

A reading of the applicable statutes and an interpretation of the Tax Commissioner's rules establish the importance of appellant's use of the property in question. In this case, however, the panels and associated cornices, light fixtures and signs serve to both partition and identify departments, a non-excepted use, and to display merchandise, an excepted use. In such a case, it is the primary use which is determinative of taxability, and incidental uses are not controlling. *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539; *Jewel Companies* v. *Porterfield* (1970), 21 Ohio St. 2d 97.

"* * * 'Primary use' connotes primacy in utility or essentiality, in quality as well as quantity." *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 140.

In the present case, the Board of Tax Appeals found that paneling and associated fixtures were indirectly facilitative to making retail sales but not used directly in making retail sales. An examination of the record supports a finding that the paneling was used primarily in separating various departments in appellant's stores in conformity with their designation as "department stores." Moreover, the burden was upon the appellant to affirmatively establish its right to an exception. *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407.

Since the record in this case with regard to the appeal contains sufficient probative evidence to support the Board of Tax Appeals' decision, the decision is reasonable and lawful and must be affirmed.

> *Decision affirmed as to appeal and reversed as to cross-appeal.*

O'Neill, C. J., Herbert, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.