366 So.2d 30 (1978)
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Petitioner,
v.
DEPARTMENT OF REVENUE, Respondent.
No. II-38.
District Court of Appeal of Florida, First District.
September 28, 1978.
*31 Donald W. Wallis and William H. Adams, III, of Mahoney, Hadlow & Adams, Jacksonville, for petitioner.
Robert L. Shevin, Atty. Gen., Harold Purnell, Asst. Atty. Gen., and John D. Moriarty, Tallahassee, for respondent.
BOYER, Judge.
By this petition, Southern Bell (petitioner here) seeks review of the decision of the Department (respondent here) determining that Southern Bell was subject to sales tax on transactions between it and artists who produced art work used in advertisements appearing in the yellow pages of Southern Bell telephone books and that the exemption contained in F.S. 212.08(7)(e) was inapplicable.
Pursuant to F.S. 212.07(9) the Department assessed a tax, penalty, and interest against Southern Bell based on alleged purchases by Southern Bell of tangible personal property on which no sales tax had been collected by the vendors. The sales tax was assessed on transactions between Southern Bell and artists who produced art work used in advertisements appearing in the yellow pages of Southern Bell telephone books.
The art work which Southern Bell acquired for use in the yellow pages fell into three different categories: (1) stock art, (2) speculative art, and (3) finished art. Southern Bell conceded in the proceedings below that it purchased stock art as tangible personal property and that those purchases were subject to the sales tax. However, Southern Bell contends that its transactions with artists who created speculative art and finished art were personal service transactions which involved sales as inconsequential elements for which no separate charges were made and thus were exempt from sales tax by virtue of F.S. 212.08(7)(e).
Prior to the final hearing, the parties entered into a stipulation of facts which defines the three types of art work. Stock art is previously created art work which is inventoried by dealers who publish catalogues describing the stock art. When Southern Bell purchases stock art, it acquires possession of papers bearing reproductions of previously prepared drawings, designs, or other representations of objects which are created by the company that sells the stock art, and are reproduced in quantity. Speculative art and finished art are created by artists with whom Southern Bell contracts. Speculative art refers to rough drawings created by artists at the specific request of the yellow pages salesperson. After a salesperson investigates the general nature of a prospective advertiser's business he gives this information to the artist who by himself or in collaboration with the salesperson creates an artistic design to show how an advertisement for the business might appear in the yellow pages. The design may be accepted or rejected by the prospective advertiser. If it is accepted, Southern Bell gives it back to the same or another artist with the request that finished art be created. Southern Bell becomes obligated to pay the artist who created the speculative art whether or not the design is accepted or rejected. The amount of the fee is measured by the size of the design and is not affected by whether or not the artist's work is used by Southern Bell. The fee is not broken down into separate amounts for the services performed and the tangible personal property transferred to Southern Bell. Finished art refers to designs which are actually photographed for use in particular yellow pages advertisements. While speculative art is a mock-up of the entire design of the advertisement, including the lettering, finished art consists of only the artistic design or *32 illustration. Finished art is precisely drawn as opposed to being merely sketched as in the case of speculative art. Southern Bell photographs the finished art and it is the photograph  not the finished art itself  which is placed in the yellow pages advertisement. The fee for finished art is either a flat fee or based upon the amount of time spent by the artist and is not affected by the use which Southern Bell makes of finished art. The artists who prepare either speculative art or finished art furnish all the materials used in the creation of the design and the relative value of the materials used ranges from 1% to 6% of the amount paid by Southern Bell to the artist.
It is Southern Bell's position that theoretically the artists could perform the services for which they are engaged without transferring any property to Southern Bell. In the case of speculative art, the artist could accompany the yellow pages salesperson on a visit to a prospective advertiser or the prospective advertiser could accompany the salesperson to the artist's studio. In the case of finished art, Southern Bell could photograph the finished art at the studio of the artist. However, Southern Bell contends both of those methods are economically impractical.
It is the Department's contention that Southern Bell purchased title and exclusive possession to the art work, since that is the only way Southern Bell could obtain the benefit of the product.
The Administrative Hearing Officer found that the transactions involved the furnishing of personal services and that no separate charge was made for the tangible personal property which was transferred. However, the Officer concluded that since it would not be economically feasible for Southern Bell to avail itself of the artist's services without taking possession of the material on which the services were performed the transfer of tangible personal property was not an inconsequential element of the transaction. Accordingly, the Officer concluded that the personal service exemption did not apply in this case. The Department approved the recommended order. This petition for review ensued.
The Department imposed tax liability on petitioner pursuant to F.S. 212.07(9) which reads in part:
"Any person who has purchased at retail, used, consumed, distributed, or stored ... tangible personal property, ... and cannot prove that the tax levied by this chapter has been paid to his vendor or lessor shall be directly liable to the state for any tax, interest, or penalty due on any such taxable transactions."
Petitioner seeks an injunction from the tax pursuant to F.S. 212.08(7)(e) on the grounds that the transactions sought to be taxed by the Department are fundamentally contracts for "services". The foregoing statute provides an exemption for "... professional ... or personal service transactions which involve sales as inconsequential elements for which no separate charges are made."
We agree with petitioner that the exemption set forth in F.S. 212.08(7)(e) applies to the transactions involved. When Southern Bell buys speculative and finished art, it is really purchasing the artist's idea and the fact that the idea is transmitted on tangible personal property is an inconsequential element of the transaction.
We reach this decision after considering several factors, viz:
(1) Whether or not the property to be transferred as a result of the transaction is already in existence or whether it is produced in the course of the services rendered.
(2) The value of the individual effort involved in the transaction as compared to the value of the property transferred.
(3) Finally, whether or not it is essential to the transaction that the specific tangible personal property be created.
Applying those factors to this case we find that the art work (not stock art) transferred to Southern Bell was created solely in the context of the particular transactions and not prior to them. The value of the services performed for Southern Bell was much greater than the value of the tangible personal property transferred to Southern *33 Bell. Finally, taking possession of the material on which the services were rendered was not essential to Southern Bell's realization of the value of the artist's services because the designs created by the artist could be disassociated from the tangible personal property even though it might not have been economically feasible to do so.
Our decision finds support in this court's decision in Askew v. Bell, 248 So.2d 501 (Fla. 1st DCA 1971). In that case, the court held that a court reporter, who for a fee records a judicial or administrative proceeding, or takes down and transcribes testimony, is engaged in rendering a service and the transcript which he furnishes to the persons who employ him is a mere incident of that service. The Askew court held that such a transaction would be subject to sales tax only when transcripts are sold to third persons who are not parties to the proceeding for which the court reporter was engaged.
Similarly, in Nova Computing Services v. Askew, D.O.A., (the department's Case No. 76-1475: March 1, 1977), the Department enacted a rule construing computer software (punched cards, paper tape and typed sheets) to be tangible personal property and subject to sales tax. Pursuant to F.S. 120.56, Nova filed a petition challenging the validity of the rule. The Administrative Hearing Officer in that case found that when computer software is sold it is the computer information which is transferred, and that the magnetic tape or punch cards which contain the information are only the means or method of transmitting it from the originator to the user. He further found that the tangible property (i.e. punch cards) involved in the process was an inconsequential element for which no separate charges were made; the consequential element being intangible property (computer information) which was not subject to the sales tax on tangible personal property under chapter 212, Florida Statutes. Therefore, he concluded that Nova and other similar corporations were selling services to their customers which were exempt from sales tax pursuant to F.S. 212.08(7)(e).
The hearing officer's order in the above mentioned proceeding constituted final agency action and was not appealed by the Department. (A copy of that order may be obtained from the Director, Division of Administrative Hearings, Tallahassee, Florida.) Although the order is not binding on this court, we find it to be persuasive to our decision.
We conclude that the personal service exemption does apply in this case. The petition for review is granted. The final order rendered by the Department is vacated and the case is remanded to the Department to enter an order consistent with the views expressed herein.
BLACK, SUSAN H., Associate Judge, concurs.
SMITH, J., dissents.
SMITH, Judge, dissenting:
The Department's assessment rests on a hearing officer's findings that speculative and finished art acquired by Southern Bell, like the stock art which concededly is taxable when sold, are not "inconsequential elements" of the transactions by which artists' personal services are engaged. Section 212.08(7)(e), Florida Statutes (1977). I believe the hearing officer's findings are correct as a matter of fact and as a matter of law.
The majority's view will command respect from philosophers who hold that all things palpable are but shadows of some ideal. In a sense every work of art, indeed every wheel and lever, is a design separable from the tangible property in which it is embodied. But as the question is what Southern Bell has purchased  the image in the artist's mind or the one he drew with ink on paper  I cannot believe that the thing acquired is "the artist's idea and the fact that the idea is transmitted on tangible personal property is an inconsequential element of the transaction." If it were true that "the designs created by the artist could be disassociated from the tangible personal property" in which the designs are manifested, a Caruso record would be sold as *34 wax and a Tolstoy novel as wood pulp, inconsequential elements of the artistry which created them, and hence nontaxable.
The hearing officer found as a fact that the end purpose of Southern Bell's transactions with artists is the acquisition of drawings, rough or finished, to show to prospective advertisers or to reproduce in the yellow pages. In my view our inquiry ends when we have found substantial competent evidence to support that finding. See Green v. Sgurovsky, 133 So.2d 663 (Fla.3d DCA 1961); Federated Dep't Stores, Inc. v. Kosydar, 45 Ohio St.2d 1, 340 N.E.2d 840 (1976). I cannot grasp the majority's distinction between the taxable sale of stock art and the nontaxable sale of speculative or finished art. In either case Southern Bell has characterized the transaction by specifying what is useful to it, and in either case the thing specified is a tangible drawing, valuable in itself, which Southern Bell uses and discards or retains as its own. Thus distinguished are the lawyer's brief and the physician's written prescription, which are but the means by which personal services are provided. Thus distinguished are the court reporter's transcripts and the punch cards and magnetic tapes of a computer service, which have only paper value apart from the information or events they record. See Askew v. Bell, 248 So.2d 501 (Fla.1st DCA 1971); Commerce Union Bank v. Tidwell, 538 S.W.2d 405 (Tenn. 1976); State v. Central Computer Services, Inc., 349 So.2d 1160 (Ala. 1977).
A different case might be presented if Southern Bell's artists licensed the use of their skill for particular purposes on particular occasions, as by drawing in chalk upon an advertiser's blackboard, then reclaiming their proprietary images by erasure. Compare Washington Times-Herald, Inc. v. District of Columbia, 94 U.S.App.D.C. 154, 213 F.2d 23 (1964), with District of Columbia v. Norwood Studios, Inc., 118 U.S.App.D.C. 358, 336 F.2d 746 (1964). But in my view this case is no different than if Southern Bell had acquired a Rembrandt to hang in its executive office.
I would affirm.