No. 61,162

KANSAS GAS AND ELECTRIC COMPANY, *Respondent-Appellee,* v. KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant,* and ROBERT WILLIAMS, *Complainant-Appellant.*

(750 P.2d 1055)

Appeal filed February 19, 1988.

*Arthur W. Solis,* staff attorney, of Kansas Commission on Civil Rights, of Wichita, was on the briefs for appellants.

*Stanley E. Craven,* of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, and *Mark A. Vining,* of Kansas Gas and Electric Company, of Wichita, were on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a sex discrimination action filed by Robert Williams under K.S.A. 44-1009(a)(1) wherein Williams contends the policies of his employer, Kansas Gas & Electric Co. (KG&E), allowing leaves of absence for female employees suffering from pregnancy-related disabilities but not allowing leaves of absence for male employees suffering work-related disabilities, are unlawful. The Kansas Commission on Civil Rights (KCCR) held in Williams' favor. On appeal, the district court held in favor of KG&E. The KCCR and Williams appeal from the decision of the district court.

Williams commenced his employment with KG&E on October 28, 1981. Three days later he injured his shoulder while at work breaking down truck tires. This accidental injury was not reported to KG&E for several months. In June 1982, Williams reinjured his shoulder at work and Williams applied for workers' compensation benefits. Surgery was necessary to repair the injury. Williams sought a leave of absence from KG&E to avoid

termination, but the request was denied. On August 27, 1982, surgery was performed on Williams' shoulder. On September 10, 1982, Williams' physician sent a letter to KG&E which stated Williams would be released for work in eight weeks. In September 1982, Williams was terminated as he had used up his sick leave and was unable to return to work. In October 1982, Williams again requested a leave of absence which was denied.

In mid-December 1982, Williams was released by his physician and filed for unemployment compensation benefits. The workers' compensation claim was resolved on January 6, 1984, with Williams receiving a 15% work disability. On April 16, 1984, Williams returned to work for KG&E in the same position he previously held with seniority to be calculated as of the reinstatement date.

On January 28, 1983, Williams filed the sex discrimination complaint herein with the KCCR alleging KG&E's refusal to grant him a leave of absence constituted sex discrimination under K.S.A. 44-1009(a)(1), which provides in part:

"(a) It shall be an unlawful employment practice:

"(1) For an employer, because of the . . . sex . . . of any person . . . to otherwise discriminate against such person in compensation or in terms, conditions, or privileges of employment . . . or to follow any employment procedure or practice which, in fact, results in discrimination, segregation or separation without a valid business motive."

K.A.R. 21-32-2, issued by the Commission, provides that it shall be an unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits. Fringe benefits include "medical, hospital, accident, life insurance and retirement benefits; profit sharing and bonus plans; leave and other terms, conditions and privileges of employment."

K.A.R. 21-32-6, also issued by the Commission, provides:

"(a) A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is prima facie discrimination.

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth and recovery therefrom, are for all job related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written or unwritten employment policies and practices involving matters such

as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities.

"(c) Where the termination of an employee who is temporarily disabled is caused by an employment policy under which insufficient or no leave is available, such termination is discriminatory if it has a disparate impact on employees of one sex and is not justified by business necessity.

"(d) *Childbearing must be considered by the employer to be a justification for a leave of absence for female employees for a reasonable period of time. Following childbearing, and upon signifying her intent to return within a reasonable time, such female employee shall be reinstated to her original job or to a position of like status and pay without loss of service, credits, seniority or other benefits.*"

Kansas Administrative Regulations, when adopted, have the force and effect of law. *Harder v. Kansas Comm'n on Civil Rights*, 225 Kan. 556, Syl. ¶ 1, 592 P.2d 456 (1979); K.S.A. 1987 Supp. 77-425.

KG&E's sickness/injury allowance policy contains paragraph S20.502(2), which provides:

"An employee whose disability (for other than compensable accidents) prevents his return to duty at the expiration of the allowances provided in the above schedule will normally be terminated at the expiration of the period of scheduled allowances. Leave (without pay) may be extended when requested by the Department Head and *with Executive approval*. Procedures outlined under the Leave of Absence policy should be followed to extend employee status."

KG&E later adopted L10.104, which provides:

"Female employees who are qualified for sickness or injury allowance benefits are eligible at their election to a leave of absence (without pay) or to earned sick leave pay when medically unable to work because of pregnancy, provided other provisions of the sick leave policy are observed as required of all employees. This is six (6) weeks or less in most pregnancies. Female employees who intend to continue their KG&E employment and desire additional time off prior to and/or following childbirth or do not have sickness or injury benefits available will, upon request, be placed on a Leave of Absence without pay."

The evidence is uncontroverted that all male and female employees are treated equally by KG&E under S20.502(2).

Female employees qualified under L10.104 have a right to seek leaves of absence thereunder for pregnancy-related disabilities. Williams and the KCCR contend that the special provi-

sions relative to pregnant employees constitute unlawful discrimination against male employees. We do not agree.

It is easy to mouth platitudes to the effect that employers should consider all employees as "its" and determine all employment policies on that basis. The extremists would declare that any deviation from this so-called ideal is unlawful. Such a position ignores the real world. Homo sapiens are either male or female. The role of bearing children falls on the female sex. As a result of our changing society, more than 50% of adult women of childbearing age work outside the home. For a variety of reasons, an ever-increasing number of households are headed by single women. Such households, economically, lag far behind their counterparts headed by single males or married couples. In recent years, considerable national attention has been focused on this problem and its causes and means of correction. One of the principal causes of the situation is the detrimental effect childbearing has on the career success of women. Let us assume three college graduates enter the market force at age 21 years with comparable jobs with the same employer. Two are women and one is a man. All three progress up the company ladder for four years. The man decides to have a family. His wife bears children. This decision has no detrimental effect on his career and in fact may enhance it if the company favors "family" men in promotions. Woman A is a single career-oriented person and/or is infertile. She bears no children and progresses uneventfully up the company ladder. Woman B is a fertile woman with the natural desire to have a family. With no company policy protecting her, bearing a child makes her drop off the rung of the company ladder she has attained. When she rejoins the labor force, she starts at the bottom again. With the birth of a second child she again drops off the rung of the ladder she is climbing. Ten or fifteen years into our example, the man and woman A in our example have a lead up the company ladder that woman B can never hope to catch. By now woman B may be divorced or widowed and the head of a three-person household. So, she now has substantial economic needs and lower income to meet such needs than do the man and woman A. Yet each of the three individuals was substantially equal in abilities and earning capacity at age 21.

The district court viewed KG&E's policy set forth in L10.104 as a form of affirmative action. That is, the policy was not intended to give pregnant women an advantage over males and nonpregnant female employees, but to give them an opportunity to remain equal with their male and female counterparts in the company. Williams and the KCCR consider this to be an outrageous position for the district court to take and claim it is error of the grossest kind. Appellants contend the district court erred in refusing to apply the three-pronged test set forth in *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, Syl. ¶ 2, 648 P.2d 234 (1982):

"The burden of proof in a proceeding under the Kansas Acts Against Discrimination, K.S.A. 44-1001 *et seq.*, is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for discrimination."

The district court initially held the three-pronged test of *Woods* inapplicable as this was an affirmative action policy. Later, in its denial of Williams' motion for reconsideration, the district court held that the first prong had to be answered in the negative as the challenged policy was not discriminatory. The district court was impressed by the fact that KG&E's policy set forth in L10.104 was in accordance with the Commission's pregnancy leave requirements set forth in K.A.R. 21-32-6.

Some attention should be given to federal legislation in this area, although this action is predicated upon K.S.A. 44-1009(a)(1). The purpose of Title VII of the Civil Rights Act of 1964 is "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of . . . employees over other employees." *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30, 28 L. Ed. 2d 158, 91 S. Ct. 849 (1971). In 1976, the United States Supreme Court ruled, in *General Electric Co. v. Gilbert*, 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401 (1976), that discrimination on the basis of pregnancy was not sex discrimination under Title VII. In re-

sponse to the *Gilbert* decision, Congress passed the Pregnancy Discrimination Act of 1978 (PDA), 42 U.S.C. § 2000e(k) (1982), which specifies that sex discrimination includes discrimination on the basis of pregnancy. Congress intended through the PDA to provide relief for working women and to end discrimination against pregnant workers. A sponsor of the PDA stated, "The entire thrust . . . behind this legislation is to guarantee women the basic right to participate fully and equally in the workforce, without denying them the fundamental right to full participation in family life." *California Federal S & L Assn. v. Guerra,* 479 U.S. 272, 289, 93 L. Ed. 2d 613, 107 S. Ct. 683 (1987) (quoting 123 Cong. Rec. 29658 [1977]).

Had a female employee of KG&E incurred the identical shoulder injury Williams did, it is uncontroverted her request for a leave of absence would have been denied just as Williams' request was. Obviously, she could not claim sex discrimination based on the leave permitted pregnant female employees. The company's policies treat both sexes the same for on-the-job injuries. Were Williams to prevail herein on the basis of sex discrimination, then the only group without leave privileges would be nonpregnant female employees—a clear example of sex discrimination. Under KG&E's policies a pregnant employee with a shoulder injury like Williams would be treated the same as Williams as the disability would not be pregnancy-related.

We conclude that the district court did not err in holding that the challenged policies of KG&E did not constitute sex discrimination under K.S.A. 44-1009(a)(1).

For their second issue, appellants contend the district court erred in failing to state the controlling legal principles it relied upon and, alternatively, misapplied the appropriate legal standards. This alternative ground has been discussed in the preceding issue. Failure to apply the proper standard of proof to the evidence has been held to be error in a discrimination case. *Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn. 1986).

In the case before us, all significant facts were undisputed. Basically, a question of law was presented. In its original opinion, the district court held the three-pronged *Woods* test inapplicable as this was a matter akin to affirmative action—removing a barrier holding back a previously discriminated against minor-

ity rather than a policy of discrimination against a group. In its decision on reconsideration, the district court adhered to this position but specifically found no discrimination under prong one of *Woods*, which ended further consideration of the *Woods* test.

There are no findings on disputed facts before us so the burden of proof applied by the district court has little significance on review. Under the circumstances herein, this court is essentially determining a question of law based upon statutes, regulations, and undisputed facts. We, therefore, decide the matter based upon our own determination of the applicable law. We conclude this issue is without merit.

The judgment is affirmed.