NUCOR STEEL, A DIVISION OF NUCOR CORPORATION, A DELAWARE CORPORATION, APPELLANT, V. DONALD S. LEUENBERGER, TAX COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

448 N.W.2d 909

Filed December 1, 1989.    No. 88-225.

R. Murray Ogborn and Tim O'Neill, of Nelson & Harding, for appellant.

Robert M. Spire, Attorney General, and L. Jay Bartel for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Nucor Steel filed two claims with the Tax Commissioner of the State of Nebraska for refunds of sales and use taxes paid for August through December 1983 and for the period from January 1984 to August 1986 regarding Nucor's purchase and use of refractory materials in connection with Nucor's manufacture of steel. The commissioner denied both claims, and on March 13 and Agusut 26, 1987, Nucor appealed to the district court for Lancaster County, which consolidated the appeals and affirmed the Tax Commissioner's decisions. In its appeal to this court, Nucor seeks reversal of the district court's judgment.

## STANDARD OF REVIEW

An appeal from a decision by the Tax Commissioner of the State of Nebraska is governed by the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1987). *American Stores Packing Co. v. Peters*, 203 Neb. 76, 277 N.W.2d 544 (1979).

In an appeal pursuant to the Administrative Procedure Act,
> the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the conclusion reached by the administrative agency, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the administrative agency heard and observed the witnesses and accepted one version of the facts rather than another.

*Department of Health v. Omaha Associates*, 232 Neb. 516, 517, 441 N.W.2d 579, 580-81 (1989). See, also, *Heithoff v. Nebraska State Bd. of Ed.*, 230 Neb. 209, 430 N.W.2d 681 (1988); *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985). See,

further, § 84-918 (Supreme Court's de novo review under Administrative Procedure Act).

## APPLICABLE TAX STATUTES

"Retail sale or sale at retail shall mean: (a) A sale for any purpose other than for resale in the regular course of business of tangible personal property . . . ." Neb. Rev. Stat. § 77-2702(10) (Reissue 1986).

"Retail sale or sale at retail shall not include the sale of: (a) Tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail . . . ." § 77-2702(11).

A sale for resale

> shall mean a sale of tangible personal property to any purchaser who is purchasing such tangible personal property for the purpose of reselling it in the normal course of his or her business, either in the form or condition in which it is purchased or as an attachment to or integral part of other tangible personal property.

§ 77-2702(14).

> Use . . . does not include the sale of that tangible personal property in the regular course of business or the exercise of any right or power over tangible personal property which will enter into or become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail.

§ 77-2702(20).

A sales tax is imposed "upon the gross receipts from all sales of tangible personal property sold at retail in this state . . . ." Neb. Rev. Stat. § 77-2703(1) (Reissue 1986). A use tax is imposed "on the storage, use, or other consumption in this state of tangible personal property purchased, leased, or rented from any retailer . . . for storage, use, or other consumption in this state . . . ." § 77-2703(2).

## BURDEN OF PROOF

The tax statutes involved in Nucor's appeal contain definitions which exclude or except personal property from the Nebraska sales and use tax. See § 77-2702(11)(a) and (20).

Nucor contends that the statutory definitions which relate to exclusion or exception from the sales and use tax should be liberally construed.

However, in addition to the specific tax statutes which we have mentioned as applicable to Nucor's appeal, we note provisions of the Nebraska "Sales and Use Tax Regulations," promulgated by the Nebraska Tax Commissioner, namely, 316 Neb. Admin. Code § 1-012 (1984), which provides:

> 012.02 There are *exempted* from the computation of the amount of sales and use taxes the gross receipts from the sale, lease, or rental of and the storage, use, or other consumption in this state of the following:
> . . . .
> 012.02D Transactions given *exempt* status due to the purchaser's intended use of the property purchased, leased, or rented. Included in this group are sales of:
> . . . .
> 012.02D(2) Property which will be incorporated as an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail . . . .

(Emphasis supplied.)

Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. See, *Douglas County Welfare Administration v. Parks*, 204 Neb. 570, 284 N.W.2d 10 (1979); *Kansas Gas & Elec. v. Com'n on Civ. Rights*, 242 Kan. 763, 750 P.2d 1055 (1988); *State v. Jenkins*, 469 So. 2d 733 (Fla. 1985); *Eastman Kodak Co. v. Fair Emp. Prac. Com.*, 86 Ill. 2d 60, 526 N.E.2d 877 (1981). See, also, § 84-902.

As a result of our examination of the language in § 77-2702(11)(a) and (20), coupled with our reading of the sales and use tax regulations, we conclude that § 77-2702(11)(a) and (20) provides an exemption from the Nebraska sales and use tax. Our construction that § 77-2702(11)(a) and (20) affords an exemption from a sales and use tax is consistent with the decisions of several other courts which have construed exclusionary language substantially similar to that found in § 77-2702(11)(a) and (20); for example, see, *North Star Steel v.*

*Iowa Dept. of Revenue,* 380 N.W.2d 677, 680 (Iowa 1986) (" ' "use" . . . shall not include processing, or the sale of . . . property in the regular course of business,' " expressed in the Iowa use tax statute, "creat[ed] an exemption from tax"); *Hospital Utilization Project v. Com.*, 507 Pa. 1, 487 A.2d 1306 (1985) (sales and use tax statute which excluded manufacturers involved in certain types of research provided an exemption from sales and use tax); *Chicago, B. & Q. R. Co. v. State Tax Comm.*, 259 Iowa 178, 142 N.W.2d 407 (1966); *Borroughs Corp. v. State Bd. of Equalization*, 153 Cal. App. 3d 1152, 200 Cal. Rptr. 816 (1984) (statutory language, use "does not include the sale of . . . property in the regular course of business," constitutes a resale exemption); *Federated v. Kosydar*, 45 Ohio St. 2d 1, 340 N.E.2d 840 (1976) (statutory exceptions from sales and use taxation pertain to a right to an exception (exemption)); *Matter of Shanty Hollow Corp. v New York State Tax Commn.*, 111 A.D.2d 968, 490 N.Y.S.2d 67 (1985) (sales tax law excepting charges to a patron for admission to use of facilities for sporting activities provided an exemption from taxation); *Timken Co. v. Lindley*, 29 Ohio App. 3d 181, 504 N.E.2d 455 (1985) (sales and use tax statute which contains certain exceptions allowed exemptions from such tax).

Since a statute conferring an exemption from taxation is strictly construed, one claiming an exemption from taxation of the claimant or the claimant's property must establish entitlement to the exemption. *Vulcraft v. Karnes*, 229 Neb. 676, 428 N.W.2d 505 (1988); *Bethphage Com. Servs. v. County Board*, 221 Neb. 886, 381 N.W.2d 166 (1986).

Thus, to prevail on its refund claim, Nucor must establish that it is entitled to exemption from the Nebraska sales and use tax.

## BACKGROUND

Nucor Steel is engaged in manufacturing steel at its plant in Norfolk, Nebraska. Nucor's steelmaking process begins with its smelter operations of melting scrap metal in an electric arc furnace and subsequent refining of the molten mass through addition of lime to remove impurities in the metal. After refinement under an appropriately high temperature, the

molten steel is poured from the furnace into a ladle for additional lime. The ladle transports the molten steel to the tundish, from which the molten metal is poured into molds which form steel billets.

Throughout smelting, Nucor must keep the steel in a molten state until the metal is poured into the billet molds. The furnace, ladle, tundish, and other manufacturing equipment used to melt metal and transfer molten steel are also made of steel. To protect the furnace and other manufacturing equipment from damage by exposure to the extremely high temperatures necessary for manufacturing steel, Nucor utilizes refractories, an insulating and protective barrier for the equipment exposed to the molten steel and its high temperature.

Due to their high melting point and ability to resist heat, refractories do not melt from the heat generated to make molten steel. In view of the high cost of refractories, Nucor tries to buy long-life refractories and takes great efforts to prolong the life of refractory material, including special care in loading scrap metal into the furnace to avoid damaging the refractories. Also, to protect refractories while molten metals are being refined, Nucor adds lime, but the lime is not intended to affect the quality of various forms of waste or byproducts—slag, scale, or bag dust—which occur in the steelmaking process. Notwithstanding efforts to conserve refractories utilized in Nucor's steelmaking process, refractories wear away and deteriorate, so that Nucor has to purchase new refractory material to replace that which has dislodged during smelting or which has become exhausted as an effective insulator. Nucor does not select refractory material on the basis of a refractory's contribution to slag, scale, or bag dust. Although some refractories are composed primarily of and all have minimal traces of other compounds, most refractories are primarily composed of silica and alumina.

Refining molten scrap metal in the steelmaking process causes the formation of slag, a substance composed of lime and other impurities extracted during refining. Slag floats atop molten metal, is eventually removed, and, after cooling, is then placed in a slag pile. Refractories become involved with slag when the refractories wear away from the walls of the

steel-manufacturing equipment and fall into the slag floating on the molten metal or when the refractories deteriorate to the point of inadequacy as an insulator and are, therefore, removed and placed in the slag pile. Approximately 95 percent of the utilized refractories enter into the composition of slag. Slag, then, as it exists after the steelmaking and refining process, is composed of lime, impurities from scrap metal, and refractory material. After iron is removed from the slag pile, Nucor sometimes sells slag, which is used as a substitute for gravel. Apart from whatever may be a technical explanation for and description of slag, "slag" means

> the dross of a metal; *specif*: a product of smelting containing mostly as silicates the substances not sought to be produced as matte or metal and having a lower specific gravity than the latter . . . a similar substance that floats on molten impure steel during refining, protects the metal from oxidation, and removes unwanted substances chemically . . . worthless matter.

Webster's Third New International Dictionary, Unabridged 2137 (1981). Further, "dross" means

> the solid scum that forms on the surface of a metal . . . when molten or melting largely as a result of oxidation but sometimes of the rising of dirt and impurities to the surface . . . waste or foreign matter mixed with a substance or left as a residue after that substance has been used or processed . . . .

*Id*. at 694.

Scale is an oxide that forms on steel billets when molten steel hardens. Ninety-five percent of scale consists of iron, silicon, and aluminum which has oxidized on the billets and contains a small amount of refractory material that has fallen into the molten metal held by the billet molds. Nucor sells scale to a manufacturer which processes the scale and sells the processed scale to cement companies. The scale's iron oxide, rather than refractories, provides value to the processed scale.

Bag dust consists of particles, including some minute pieces of refractory material, removed by an exhaust system during the refining process. Nucor has sold, or at times given away, the bag dust to a firm that processes the dust into a micronutrient

used in fertilizer. Since bag dust has been classified as a hazardous material by the Environmental Protection Agency, Nucor gives away any bag dust which cannot be sold inasmuch as Nucor lacks proper storage facilities for this material. The value of bag dust is attributed to zinc and iron, neither of which originates in the refractory material used by Nucor.

In its refund claims, Nucor essentially contends that since virtually all the refractories are eventually present in slag, scale, or bag dust, purchase and use of refractories are excluded from Nebraska's sales and use tax because the refractory material enters into or becomes an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail. See § 77-2702(11)(a) and (20). Nucor also contends that its purchase and use of refractories are not subject to sales and use tax because refractories are purchased for resale in the regular course of Nucor's steelmaking business. See § 77-2702(10)(a), (14), and (20).

### INGREDIENT AND COMPONENT PART EXEMPTION

Nucor first claims that the refractory material is personal property that enters into and becomes "an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail," see § 77-2702(20), and, thus, is not subject to the sales and use tax imposed under § 77-2703(1) and (2).

Regarding Nucor's claims, refractory materials are not subject to sales and use tax if two statutory requirements are fulfilled: (1) the refractories enter into and become an ingredient or component part of a finished product (slag, scale, bag dust), and (2) the finished product (slag, scale, bag dust) is manufactured, processed, or fabricated for ultimate sale at retail. See § 77-2702(11)(a) and (20).

Concerning the Nebraska sales and use tax, the exemptive requirement that the property enter and become an ingredient or component part of a finished product has been discussed in two decisions of this court.

In *American Stores Packing Co. v. Peters*, 203 Neb. 76, 277 N.W.2d 544 (1979), this court determined that cellulose casings

used in the manufacture of skinless meat products (frankfurters) did not become an ingredient or component part of the frankfurters. Casings served as a mold for frankfurters, and only a small amount of glycerin, which was contained in the casings, found its way into the frankfurters. In concluding that the casings did not become an ingredient or component part of the frankfurters, we stated:

> The determination of whether or not tangible property enters into or becomes an ingredient or component part of other property does not ordinarily offer any difficulty. The lumber which goes into the manufacture of a piece of furniture obviously becomes a component part of that furniture, i.e., the function of the lumber is that of being a component and it serves no other purpose. In the case before us, the casing served the apparently indispensable function of a mold. In the end, the casing is discarded. . . . The principal function of the glycerine and moisture is to enable the casing to serve its function. The transfer of some part of the glycerine into meat which already contains glycerine appears *incidental*.

(Emphasis supplied.) *Id*. at 83, 277 N.W.2d at 548.

In *Nucor Steel v. Herrington*, 212 Neb. 310, 322 N.W.2d 647 (1982), this court again interpreted the "ingredient and component part" exclusion from sales and use tax and held:

> Where graphite electrodes are used in the manufacture of steel for the dual purpose of providing essential carbon for the steel manufacturing process and for the conduction of electricity which provides heat for the process, and where a substantial part of the graphite electrodes enters into and becomes an *essential* ingredient or component part of the finished steel and the remainder is consumed in the manufacturing and refining process, the use of such graphite electrodes in the manufacturing and processing of steel for ultimate sale at retail is not subject to taxation under the provisions of §§ 77-2702 and 77-2703.

(Emphasis supplied.) *Id*. at 318-19, 322 N.W.2d at 651. Also, in *Nucor Steel v. Herrington, supra*, the court "distinguished steel processing cases in which the property involved was an *essential*

component that entered into the chemical process of making steel" (emphasis supplied), *id*. at 316, 322 N.W.2d at 650, from those cases in which "the taxed substance was only *incidentally* added to the final product rather than being an *essential* ingredient or component part of the finished product." (Emphasis supplied.) *Id*. at 317, 322 N.W.2d at 650.

"Incidental" means "occurring merely by chance or without intention or calculation: occurring as a minor concomitant . . . being likely to ensue as a chance or minor consequence . . . met or encountered casually or by accident." Webster's Third New International Dictionary, Unabridged 1142 (1981). "Incidentally" means "by chance: as a matter of minor import: CASUALLY." *Id*.

From *American Stores Packing Co. v. Peters, supra*, and *Nucor Steel v. Herrington, supra*, the principle evolves that material which only accidentally or incidentally becomes incorporated into a finished product and which is not an essential ingredient of the finished product is subject to sales and use tax because such material is not an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail.

So long as a material enters into and is an essential ingredient or component part of a product manufactured, processed, or fabricated for ultimate sale at retail, the material is excluded from the Nebraska sales and use tax, notwithstanding that the material may be used for more than one purpose in manufacturing, processing, or fabricating the product. *Nucor Steel v. Herrington, supra*.

The refractories involved in Nucor's present appeal are clearly used for the purpose of protecting the steel-manufacturing equipment from high temperatures. The refractory material may, nevertheless, qualify for exclusion from sales and use tax if refractories enter into and become an essential ingredient or component part of the slag, scale, or bag dust as products manufactured, processed, or fabricated for ultimate sale at retail.

For scale and bag dust, refractories do not contribute any value. Although small quantities of refractories are present in scale and bag dust involved in the steelmaking process, the

value of scale and bag dust is not attributable to any substance found in the refractories. From a practical as well as an analytical point of view, bag dust and scale would be the same with or without refractories. Consequently, refractories are merely incidental to scale and bag dust.

It is unclear whether refractories become an essential ingredient or component part of slag. On one hand, Nucor's concern about prolonging the life of refractories, coupled with the manner in which refractories exist in slag, leads to the conclusion that the presence of refractories in slag is only incidental to the slag. On the other hand, approximately 95 percent of the refractories are eventually involved in slag. Hence, the evidence is inconclusive whether the slag's value is attributable to the introduction of refractories or exists independent of refractories.

However, notwithstanding a determination that refractories enter into and become an essential ingredient or component part of the slag, the slag itself must be a product "manufactured, processed, or fabricated for ultimate sale at retail" before refractory material is exempt from the Nebraska sales and use tax.

In *American Stores Packing Co. v. Peters*, 203 Neb. 76, 277 N.W.2d 544 (1979), without avail the taxpayer claimed that a cellulose casing was incorporated into a finished meat product, i.e., a frankfurter. Obviously, a frankfurter is a product "manufactured, processed, or fabricated for ultimate sale at retail." In *Nucor Steel v. Herrington*, 212 Neb. 310, 322 N.W.2d 647 (1982), the taxpayer successfully argued that carbon electrodes were incorporated into the finished product of steel, which is a product "manufactured, processed, or fabricated for ultimate sale at retail."

Yet, it is far from obvious that the slag is a product "manufactured, processed, or fabricated for ultimate sale at retail." "Manufacture," in its ordinary usage, means "to make (as raw material) into a product suitable for use . . . to make from raw materials by hand or by machinery . . . to produce according to an organized plan and with division of labor . . . ." Webster's Third New International Dictionary, Unabridged 1378 (1981). "Process" means "to subject to a particular

method, system, or technique of preparation, handling, or other treatment designed to effect a particular result . . . ." *Id.* at 1808. "Fabricate" means "to form by art and labor: MANUFACTURE, PRODUCE . . . to form into a whole by uniting parts: CONSTRUCT, BUILD . . . to build up into a whole by uniting interchangeable standardized parts . . . ." *Id.* at 811.

Nucor's slag consists of lime, impurities from the scrap metal, and a small amount of refractory material. Slag contains refractory material which has served as an insulator protecting Nucor's equipment against extremely high temperatures, but has accidentally, or at least without design in the steelmaking process, fallen from the insulated equipment into the floating slag atop the molten metal, or which, more simply, has been discarded because the refractories have lost their capacity to adequately insulate Nucor's equipment during the steelmaking process. In the light of the foregoing definitions of "manufacture" and "process," refractories which have fallen from the walls of a furnace or which have been discarded on a slag pile cannot be reasonably characterized as material used in a product, slag, which has been "manufactured, processed, or fabricated for ultimate sale at retail."

Furthermore, as the definition of "process" indicates, the system or method used must be "designed to effect a particular result . . . ." The definition of "manufacture" commences with "to make" or "to produce," and the definition of "fabricate" begins with "to form." In reference to processing, manufacturing, or fabrication, "to" means "for the purpose of" or "with the result of." *Id.* at 2401. Clearly, Nucor's business activity is manufacturing steel. The presence of refractory material in slag, scale, and bag dust is only incidental to Nucor's business activity, as evidenced by the fact that Nucor selects refractories solely on the basis of performance and longevity as effective insulators for steel-manufacturing equipment and not on the basis of refractory material as an element of slag, scale, or bag dust.

In support of its argument that refractories are an ingredient or component part of a product manufactured, processed, or fabricated for ultimate retail sale, Nucor relies heavily on *North*

*Star Steel v. Iowa Dept. of Revenue*, 380 N.W.2d 677 (Iowa 1986), in which the Iowa Supreme Court determined that refractory material used in the steelmaking process was not subject to the Iowa use tax in view of a processing exemption in Iowa Code § 423.1(1) (1977), which provided:

" '*Use*' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of that property in the regular course of business. Property used in 'processing' within the meaning of this subsection shall mean and include (a) any tangible personal property including containers which it is intended shall, by means of fabrication, compounding, manufacturing, or germination, become an integral part of other tangible personal property intended to be sold ultimately at retail . . . ."

380 N.W.2d at 680. As used by the court in *North Star Steel*, "processing 'refers to an operation whereby raw material is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property.' " 380 N.W.2d at 683. With the foregoing definition of "processing," the court in *North Star Steel* determined that refractory material was property used in "processing" within the meaning of the Iowa use tax statute and, therefore, was exempt from taxation in Iowa because "[t]here is no evidentiary support whatsoever for the further determination by the agency that North Star did not 'intend' the refractory material to enter the slag and bag dust, retail products." *Id*.

However, in *North Star Steel*, there was no mention of two important facts present in Nucor's current appeal to this court, namely, Nucor (1) selects refractories solely for their durability and performance as insulation for steel-manufacturing equipment and (2) takes precautionary measures to maximize the duration of refractories and minimize their dissipation. Thus, *North Star Steel* is readily distinguished from Nucor's case because there is ample evidence to support the finding that Nucor had no plan or design for introduction of the refractory

material, directly or indirectly, into slag, scale, and bag dust in connection with the production of steel. Furthermore, while the court in *North Star Steel* determined that refractory material was used in the "processing" of slag and bag dust, it is extremely difficult, if not impossible, to characterize carting debilitated refractories from the smelter to the slag pile as "special treatment" involved in steelmaking. Although slag and bag dust were sold at retail, such sale does not necessarily mean that the items are "processed" for ultimate sale at retail. Consequently, *North Star Steel* is unpersuasive for a determination of Nucor's present appeal.

Nucor also relies on *Lone Star Indus. v. Dep't of Revenue,* 97 Wash. 2d 630, 647 P.2d 1013 (1982). In *Lone Star,* the Supreme Court of Washington found that purchase and use of refractory material for a kiln used in the manufacture of cement were exempt from Washington's use tax. Nucor points out that the court in *Lone Star* based its holding on the fact that the refractory material became an ingredient of cement, but ignores the fact that the court made a specific finding that the refractory material contained *necessary* and *essential* ingredients for cement. Thus, the *Lone Star* decision comports with the principle that refractories, to be exempt from a sales and use tax, must enter into and become essential ingredients or component parts of slag, scale, or bag dust, which occur in the process of steelmaking.

Nucor has failed to establish that refractories entered into and became essential ingredients or component parts of Nucor's slag, scale, or bag dust. Nucor has also failed to show that slag, scale, or bag dust are property manufactured, processed, or fabricated for ultimate sale at retail. For these reasons, Nucor has failed to establish that it is entitled to an exemption from Nebraska's sales and use tax. See § 77-2702(11)(a) and (20).

## RESALE IN REGULAR COURSE OF BUSINESS

Nucor's second argument is that the refractory materials are purchased for resale in the regular course of Nucor's business and, thus, are excluded from taxation under the definitions of "sale at retail," "sale for resale," and "use." See

§ 77-2702(10)(a), (14), and (20). Nucor argues that since refractory material is resold as slag, scale, or bag dust in the regular course of its business, the refractory material is not subject to the sales and use tax.

As we have previously stated in this opinion, Nucor selects refractories on the basis of their performance as insulators for Nucor's equipment used in making steel. Efficacy in reference to slag, scale, or bag dust is not a consideration in Nucor's selection of refractory material. Since Nucor clearly does not purchase refractories for the purpose of reselling the refractories, Nucor does not satisfy the requirement of § 77-2702(14), namely, exemption from the Nebraska sales and use tax concerning property purchased "for the purpose of reselling it . . . ." In view of our discussion regarding the relationship between refractory material and slag, scale, and bag dust, that is, whether refractories become ingredients or component parts of slag, scale, and bag dust as byproducts in Nucor's business of steelmaking, Nucor has failed to demonstrate that refractories are resold "as an . . . integral part of other . . . property" to qualify for exemption from the sales and use tax pursuant to § 77-2702(14).

## CONCLUSION

After our de novo review of the record, we arrive at the same conclusion reached by the district court, namely, Nucor is not entitled to the tax refunds claimed. Consequently, the district court's judgment affirming the Tax Commissioner's orders rejecting and denying Nucor's refund claims is affirmed.

AFFIRMED.