IN RE APPLICATION OF JANTZEN.
HENRY JANTZEN AND VERN JANTZEN, APPELLEES, v. DILLER
TELEPHONE COMPANY, APPELLANT.

510 N.W.2d 482

Filed July 20, 1993. No. A-92-038.

Jack L. Shultz and Gregory D. Barton, of Harding & Ogborn, for appellant.

Henry Jantzen and Vern Jantzen, pro se.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

WRIGHT, Judge.

Protestant, Diller Telephone Company (Diller), appeals from the December 19, 1991, order of the Nebraska Public Service Commission (Commission) which granted the application of Henry Jantzen and Vern Jantzen. The Commission's order transferred Vern's farmstead from Diller's Harbine exchange to the Plymouth exchange of the Lincoln

Telephone & Telegraph Company (LTT) and determined Diller's loss of investment to be $338.91.

Diller claims that (1) the Commission erred as a matter of law in taking into consideration that local callers within Vern's community of interest must pay toll charges to call him; (2) it was arbitrary, capricious, and unreasonable for the Commission to determine that local callers within Vern's community of interest often do not call him because it would be a toll call and that Diller did not provide full telephone exchange service to Vern's community of interest; (3) the Commission erred in its consideration of the type of 911 service provided by Diller to Vern in resolving the issue of adequacy of the telephone exchange service; and (4) the Commission's determination that Diller's loss of investment was $338.91 was arbitrary, capricious, and unreasonable.

## SCOPE OF REVIEW

In an appeal from an order of the Public Service Commission, the appellate court examines the record to determine whether the Commission acted within the scope of its authority and whether the evidence shows that the order in question was unreasonable or arbitrary. *In re Application of George Farm Co.*, 233 Neb. 23, 443 N.W.2d 285 (1989).

## FACTS

Henry and Vern filed their application to receive telephone service from the Plymouth exchange of LTT on December 18, 1990. Notice of the application was published in the Daily Record in Omaha on December 20. Diller filed its protest to the application on January 23, 1991.

Henry lives 2 miles east and 2 miles south of Plymouth, where he has farmed since 1953. In 1974, he purchased a farmstead where Vern now lives. This farmstead is 1 mile south and 1 mile east of Henry's. Henry's farmstead is in the Plymouth exchange served by LTT, and Vern's farmstead is in the Harbine exchange served by Diller.

Henry's previous applications, filed with the Commission in 1974, 1975, and 1976, to extend the boundary of the Plymouth exchange of LTT to include the purchased farmstead were denied. The farmstead upon which Vern resides has a Plymouth

address, is in the Plymouth fire district, and is located closer to Plymouth than to Diller. Henry owns all of the property in question, which consists of 355 acres.

The first hearing on the December 18, 1990, application was held March 28, 1991. Vern testified that he was not receiving and would not receive within a reasonable time reasonably adequate exchange telephone services. He uses the telephone for business and pleasure, and his primary community of interest is served by the Plymouth exchange. Vern testified that the duplicated service issue did not exist because an LTT cable is buried 108 feet north of the telephone service entrance to his house, while Diller has a cable 324 feet east of the service entrance. Vern said he is willing to pay any reasonable cost associated with any loss to Diller and any reasonable cost to connect to LTT.

On May 14, 1991, the Commission found that the application was fair and reasonable and that it was in the public's interest to grant the application. The Commission determined that the loss of investment to Diller was $97.21 and that the applicants were required to pay to LTT the construction charge to connect the facilities using the most advantageous route to the applicants' premises. The Commission further determined that subsequent to the applicants' payment to Diller for the lost investment, both the Plymouth exchange and the Harbine exchange boundary maps were to be revised to incorporate the entire farm property in question in the Plymouth exchange.

After Diller filed a motion for rehearing and/or reconsideration, the Commission granted a rehearing, which was held September 13, 1991. Exhibits and the transcript from the first hearing were admitted into evidence at the second hearing. The Commission then entered a second order on November 26, denying the application. The applicants timely filed a motion for rehearing and/or reconsideration, and on December 19, the Commission revoked its orders of May 14 and November 26 and granted the application. The Commission determined that the loss of investment to Diller was $338.91. The applicants were required to file with the Commission a receipt showing payment of that amount and

were required to pay the LTT construction charge to connect the facilities using the most advantageous route to Vern's premises. The Commission ordered that upon the applicants' payment to Diller for the lost investment, both the Plymouth exchange and the Harbine exchange boundary maps should be revised to incorporate the entire farm property in question into the Plymouth exchange. The Commission also ordered that LTT be issued a certificate of convenience and necessity to serve that portion of the territory added to its exchange. Diller appeals the findings and order of the Commission entered December 19, 1991.

## ANALYSIS

In our review of this matter, we note that agency regulations properly adopted and filed with the Secretary of State have the effect of statutory law. *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989). Neb. Rev. Stat. § 75-110 (Reissue 1990) provides:

> The commission shall adopt rules for the government of its proceedings, including rules of procedure for notice and hearing. The commission shall also promulgate regulations which the commission deems necessary to regulate persons within the commission's jurisdiction. The commission shall not take any action affecting persons subject to the commission's jurisdiction unless such action be taken pursuant to a rule, regulation, or statute.

The applicable rules in effect at the time of the application were found at 291 Neb. Admin. Code, ch. 1, §§ 014 and 015 (1988).

In the preliminary matters of the Commission's order of December 19, 1991, the Commission noted that the Jantzens' application was filed on December 18, 1990, and that notice of the application was published in the Daily Record on December 20. Section 014.02 requires that protests be filed within 30 days of the date of the publication of the notice. The Commission specifically noted that because the 30th day fell on a Saturday, the following weekday which was not a holiday became the 30th day. Monday, January 21, 1991, was a state holiday (Martin Luther King, Jr., Day), and therefore, January 22 was the final date for filing a protest. The Commission noted that since

Diller filed its protest on January 23, technically the protest was too late to allow Diller to participate in the proceedings. The Commission stated: "However, since the applicants did not file or make a timely motion at or before the hearings objecting to the appearance of the protestant, we will not preclude either the protestant's participation nor its evidence. The Commission will not assume the role of a party's legal counsel." We address this issue because we believe it is decisive of the appeal.

We set forth the following applicable rules of Commission procedure:

014 Protests.

014.01 Content of Protest; Failure to File. In addition to the requirements of Section 005.07, a protest shall set forth specifically the grounds upon which it is made, shall state the interest of the protestant in the proceeding, and shall specify the facts and circumstances relied upon. Except as provided in Section 015, failure to timely file a protest shall be construed as a waiver of opposition and participation in the proceeding.

014.02 Protests Against Applications; When Filed. Except as provided in Sections 014.03 and 014.04, and unless otherwise provided in statute, a protest against the granting of any application shall be filed with the [C]ommission within thirty (30) days from the date of publication of said notice. A copy of the protest should be served upon all adverse parties of record, or upon their attorneys of record.

. . . .

015 Intervention in Proceedings.

015.01 Formal Intervention; Status. Any person who has an interest in any proceeding pending before the Commission, but who does not desire to file a formal protest, may file a Petition of Formal Intervention. Such person shall be designated as a "formal intervenor", and shall become a party to the proceeding.

. . . .

015.03 Formal Intervention; When filed; Service. A Petition of Formal Intervention shall be filed with the Commission within the time specified in 014.02 for the

filing of a formal protest. . . .

015.04 Formal Intervention; Participation in Proceedings. A formal intervenor shall be entitled to participate in the proceeding to the extent of his express interest in the matter. Such participation shall include, without limitation, the presentation of evidence and argument, the cross-examination of witnesses and the submission of rebuttal evidence. As a party, a formal intervenor shall also have the right of appeal.

Leave to intervene informally may be granted by the Commission, but the informal intervenor does not become a party to the proceeding. Participation is limited to the presentation of a prefiled statement of a single witness, together with exhibits by such witness, and participation in oral argument submission of briefs. In our review of the Commission's rules, we note that the failure to timely file a protest shall be construed as a waiver of opposition and participation in the proceedings. Such protest must be filed within 30 days from the date of publication of the notice of the application. Persons who are not interested in filing a formal protest may intervene and are considered a party to the proceeding if they intervene within 30 days from the date of publication of the notice of the application. A formal intervenor is entitled to participate in the proceedings, including the examination of witnesses and the presentation of evidence, and the intervenor has the right of appeal. Informal intervention is allowed, but an informal intervenor does not become a party to the proceeding.

In summary, the rules set forth who may be a party, how a party may intervene, and what rights the parties have based on the type of intervention. These rules and regulations are binding on the Commission in the same manner as if they were statutes. The Commission is required to conform to these rules.

In *Douglas County Welfare Administration v. Parks*, 204 Neb. 570, 572, 284 N.W.2d 10, 11-12 (1979), the court stated:

Generally, rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency, are as binding as if they were statutes enacted by the Legislature. Likewise,

procedural rules are binding upon the agency which enacts them as well as upon the public, and the agency does not, as a general rule, have the discretion to waive, suspend, or disregard, in a particular case, a validly adopted rule so long as such rule remains in force. This is true even though the adoption of the rule was a discretionary function, and plenary powers, or powers resting in the absolute discretion of an agency, may thus be rendered subject to procedural limitations. To be valid, the action of the agency must conform to its rules which are in effect at the time the action is taken, particularly those designed to provide procedural safeguards for fundamental rights.

In *Douglas County Welfare Administration*, the district court for Lancaster County found that the appellants had filed their appeals with the Joint Merit System Council of Nebraska out of time. The district court held that the granting of the second appeal was without authority because the appellants had filed their appeal more than 30 days after their dismissal. The rules of the Joint Merit System provided that a permanent employee who was dismissed, suspended, or demoted had the right to appeal to the council not later than 30 days after the effective date of the dismissal, suspension, or demotion. The appellants argued that the council could waive its own rules with regard to filing an appeal and could hear the cases it desired. The Supreme Court, in affirming the decision of the district court, found no reason not to follow the rule of the council. The attempt of the council to later give itself authority to hear the appeal was a nullity and of no force and effect.

No case in Nebraska has determined whether the failure to file a timely protest waives the right of the protestant to participate in the proceeding, as provided by § 014.01. In *In re Application of George Farm Co.*, 233 Neb. 23, 443 N.W.2d 285 (1989), the applicant raised the issue of whether the failure of the telephone company to timely protest waived its right to participate in the proceedings. The court did not consider this argument because its determination was not necessary, as the court reversed the Commission's order on other grounds.

We believe *Douglas County Welfare Administration* controls our decision in this case. We find that the Commission did not

have the discretion to waive or disregard the untimely filing of a protest by Diller. As noted in *Douglas County Welfare Administration*, procedural rules are binding upon the agency which enacts them, and the agency does not have the discretion to disregard a validly adopted rule which remains in force. The rules of Commission procedure establish in detail the conduct of a hearing and the responsibilities of the protestant. The "failure to timely file a protest shall be construed as a waiver of opposition and participation in the proceeding." § 014.01.

We find no reason to deviate from that rule, and we therefore reverse the order of the Commission entered December 19, 1991, and remand the cause with directions that the Commission reinstate its order entered May 14, 1991, and include therein the finding that pursuant to § 014.01 the failure of Diller to file its protest within 30 days has constituted a waiver of opposition and participation in the proceedings.

We further direct that Diller be required to refund to the applicants the difference between the amount found due in the Commission's order of December 19 and the amount found due in the Commission's order of May 14.

REVERSED AND REMANDED WITH DIRECTIONS.