AMERICAN STORES PACKING CO., DIVISION OF ACME MARKETS, INC., A PENNSYLVANIA CORPORATION, APPELLANT, V. WILLIAM E. PETERS, TAX COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

277 N. W. 2d 544

Filed April 17, 1979. No. 41919.

Charles E. Lowe of Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The issue in this case is whether cellulose casings used in the manufacture of skinless meat products such as frankfurters is subject to payment of the use

tax prescribed by section 77-2703(2), R. R. S. 1943. The Tax Commissioner had assessed against American Stores, a division of Acme Markets, Inc., a use tax deficiency for the period January 1, 1972, to April 30, 1975. The taxpayer protested and a hearing was held as prescribed by statute. The Tax Commissioner, after redetermining the tax, affirmed a deficiency assessment of $47,976.37. Appeal was then taken to the District Court for Lancaster County under the provisions of the Administrative Procedure Act. The District Court affirmed the Tax Commissioner and appeal was then taken to this court. We affirm.

Section 77-2703(2), R. R. S. 1943, provides in part: "A use tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property purchased, leased or rented from any retailer on or after June 1, 1967, for storage, use, or other consumption in this state at the rate set as provided in subsection (1) of this section on the sales price of the property . . . ." Subsection (a) of the above section provides in part: "Every person storing, using, or otherwise consuming in this state tangible personal property purchased from a retailer or leased or rented from another person for such purpose is liable for the use tax." Use is defined by section 77-2702(20), R. R. S. 1943, as follows: "Use shall mean the exercise of any right or power over tangible personal property incident to the ownership or possession of that tangible personal property, except that it does not include . . . personal property in the regular course of business or the exercise of any right or power over tangible personal property *which will enter. into or become an ingredient or component part of tangible personal property* manufactured, processed or fabricated *for ultimate sale at retail.*" (Emphasis supplied.)

The precise issue is whether the casing is used so that it "will enter into or become an ingredient or

component part" of the finished meat product and thus not subject to the use tax.

The evidence pertinent to the issue was introduced by stipulation of the parties and the explanatory testimony of a chemist called by American Stores. The testimony of the chemist was founded upon the facts and evidence contained in the stipulation and his observation of the manufacturing process. He conducted no chemical or other tests.

From the evidence, the Tax Commissioner could arrive at the following as fact. American Stores is a meat packer and manufacturer of finished meat products with a plant located in Lincoln, Nebraska. Its products are sold to retail food markets for ultimate resale to consumers. In the process of manufacturing "skinless" frankfurters and certain luncheon meats, it uses cellulose casings purchased from makers outside the state and brings the casings into this state for use in the process of manufacture of the mentioned meat products. Into the cellulose casing have been "absorbed" (the language of the chemist) glycerine and moisture. When received, the three elements are by weight in the following proportions: Cellulose, 60-70 percent; glycerine, 23-25 percent; and moisture, 6-15 percent.

The casing is in long, tubular form. In the course of manufacture of the skinless meat products, the casing is utilized in the following fashion. It is stuffed mechanically with the prepared meat product. The casing, after being tied in segments, then moves onto a conveyor belt and is subjected to a series of processes, among which are a vinegar shower, liquid smoke shower, cooking, and a series of chill showers. The testimony is that, during the vinegar shower, an undetermined amount of the glycerine with which the casing is impregnated, moves by osmosis from the casing into the meat and penetrates the meat slightly. At the end of the process, the cellulose casing is slit by a device with a

razor-like edge and the casing is blown off. The casing is still recognizable as a casing, but it is without economic value and is discarded.

The glycerine and moisture in the casing serve several functions. In the words of the chemist, they make the cellulose manageable so that it can be stuffed, shaped, and conveyed. The glycerine permits the casing to be peeled easily from the frankfurter or other product after slitting. The glycerine also coats the outer surface of the product, improves its appearance, and inhibits drying out of the product, thus increasing its shelf life. Two and one-tenth percent of the casings contain dye which moves into the meat with the glycerine and improves the coloration of the product. The chemist testified it would be excessively expensive to conduct tests to determine the amount of glycerine moving from the casing into the meat because there is already glycerine in the meat and the testing would be complex.

The position of American Stores, stated in the briefest form, is that "enough [of the glycerine] goes in [to the product] to make a difference" and this should be the test of whether the casing enters into or becomes an ingredient or component part of the product. The Tax Commissioner emphasizes that the casings as such do not enter into or become components or ingredients of the product in any real sense and American Stores is the ultimate consumer of the casings. He points out the general plan of the sales and use tax is that every item of personal property, not specifically excluded, is to be subject to either one or the other of the taxes at some point of the chain of commerce. Pepsi Cola Bottling Co. v. Peters, 189 Neb. 271, 202 N. W. 2d 582. Unless, therefore, the tax is imposed on the use of the casings in the hands of American Stores, the casings escape taxation completely.

We do not propose to discuss in any detail American Stores' highly refined semantic arguments. Nor

do we think it necessary to discuss rules of construction of statutes. We find the precedents cited by the Tax Commissioner the most persuasive.

American Stores argues that this case is governed by State v. United States Steel Corporation, 281 Ala. 553, 206 So. 2d 358; and State v. Southern Kraft Corporation, 243 Ala. 223, 8 So. 2d 886. In State v. United States Steel Corporation, *supra*, the issue was whether the sales of oxygen to a manufacturer of steel were retail sales subject to tax, or wholesale sales not subject to tax. The determination of the issue depended upon language of the Alabama statute defining wholesale sales as including those of tangible personal property " 'which enters into and becomes an ingredient or component part' " of the product which is manufactured for sale. In that case, the oxygen was acquired from a seller in the state. This would be the same situation in our case had American Stores purchased the casings from a supplier in this state. The issue in the two cases is therefore essentially identical although one involves use tax and the other sales tax. In our judgment, however, the difference in facts makes the Alabama precedent inapplicable to the issue here. In the Alabama case, the oxygen was injected into the molten metal in the furnaces. The purpose of putting the oxygen in the steel was to control the carbon content of the steel and contribute to its hardness and smoothness. Clearly in that case the oxygen was an essential component that entered into the chemical process of making steel. The oxygen did not in any degree serve the function of a mold or substitute for any mechanical device. It was in any view an ingredient even though most of the oxygen escaped or remained in the slag which was the waste product remaining after the process was completed. State v. Southern Kraft Corporation, *supra*, involved paper manufacture and the issue was whether or not various chemicals, such as lime, sulphur, and others

used in the process, became " 'ingredient or component part of the finished product.' " The court held as fact that the chemicals did become a substantial "ingredient or component part," even though only a small percentage remained in the finished product. State v. Southern Kraft Corporation, *supra*, in our view, involves essentially the same situation as that in State v. United States Steel Corporation, *supra*.

The Tax Commissioner here relies upon the following precedents: Luer Pack. Co. v. State Bd. of Equalization, 101 Cal. App. 2d 99, 224 P. 2d 744; Briggs and Co. v. District of Columbia, 196 F. 2d 241 (D. C. Cir., 1952); Smith Refining Co. v. Dept. of Finance, 371 Ill. 405, 21 N. E. 2d 292; Traigle v. PPG Industries, Inc., 332 So. 2d 777 (La., 1976); Union Portland Cement Co. v. State Tax Commission, 110 Utah 135, 170 P. 2d 164; American Distilling Co. v. State Board of Equalization, 55 Cal. App. 2d 799, 131 P. 2d 609; Hervey v. Internatl. Paper Co., 252 Ark. 913, 483 S. W. 2d 199. Under the facts of this case, these precedents are more on point than the Alabama authorities.

Briggs and Co. v. District of Columbia, *supra*, and Luer Pack. Co. v. State Bd. of Equalization, *supra*, both involved imposition of use tax upon cellulose casings used in the manufacture of skinless frankfurters by means of a process essentially the same as in the case before us. In Luer it was argued the casings were exempt because, among other reasons, of a food product exemption in the California statute. In that case the court mentions in its opinion that part of the glycerine migrates from the casing into the meat. The fact some of the glycerine migrated did not make the casing a food product. In Briggs the statutory exception was of property " 'in which the purpose of the purchaser is * * * to use or incorporate the property so transferred as a material or part of other tangible personal property to be

produced for sale by manufacturing, assembling, processing . . . .' '' The court there regarded the casing as merely an instrumentality or utensil used in the manufacture and not as property being incorporated into the product.

In Smith Refining Co. v. Dept. of Finance, *supra*, the material subject to the tax was "core oil." In that case the statutory exemption was of property purchased " 'for use and consumption and not for resale in any form as tangible personal property.' '' The following extract from the opinion gives the essential facts: "The purchasers of the core oil are engaged in the business of making iron castings to be sold by them. In many castings voids or cavities are necessary. In order to make these voids cores are used. The cores are made in the shape and size of the desired void. The core is placed inside the mould and hot metal is poured in the space between the core and the mould. When the metal solidifies, it is the iron casting. The core is composed of sand and core oil. The function of the core oil is to bind the grains of sand together. After the metal has cooled the core is removed. It is conceded the core oil is not resold as core oil. The decisive issue is whether it is resold 'in any form' as tangible personal property." The evidence there showed that "some of the core oil decomposes and that a portion of the carbon formed by such decomposition is absorbed by and becomes a part of the iron casting." The court upheld a determination that the core oil did not in any form become an ingredient or constituent of the molding within the meaning of the pertinent statute. In so doing it relied primarily upon the function performed by the oil and regarded as de minimis that part of the oil which became part of the castings. The other authorities cited by the Tax Commissioner involved comparable situations and statutes and the issue was resolved on a variety of rationales, but all

are supportive of the Tax Commissioner's position. We will not discuss them.

The determination of whether or not tangible property enters into or becomes an ingredient or component part of other property does not ordinarily offer any difficulty. The lumber which goes into the manufacture of a piece of furniture obviously becomes a component part of that furniture, i.e., the function of the lumber is that of being a component and it serves no other purpose. In the case before us, the casing served the apparently indispensable function of a mold. In the end, the casing is discarded. It does not become an ingredient or component in any real sense, as it does not reach the ulitmate consumer of the meat product. If one judges solely by the physical evidence, i.e., a sample of unused casing and a sample of used casing, the answer seems almost obvious. The casing remains after the manufacture. The principal function of the glycerine and moisture is to enable the casing to serve its function. The transfer of some part of the glycerine into meat which already contains glycerine appears incidental.

The Tax Commissioner's determination that the cellulose casing did not enter into or become an ingredient or component part of the meat products within the meaning and purpose of sections 77-2702 (20), R. R. S. 1943, was correct and was properly sustained by the District Court.

AFFIRMED.