NUCOR STEEL, A DIVISION OF NUCOR CORPORATION, A DELAWARE CORPORATION, APPELLEE, v. FRED A. HERRINGTON, TAX COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLANTS.

322 N.W.2d 647

Filed July 30, 1982. No. 44240.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellants.

Murray Ogborn of Nelson & Harding, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

The plaintiff, Nucor Steel, filed a claim with the Tax Commissioner of the State of Nebraska for refund of state and local use taxes paid on its purchase and use of graphite electrodes in connection with the manufacture of steel. The Tax Commissioner denied the claim and Nucor appealed to the District Court for Lancaster County. On appeal the District Court reversed the order of the Tax Commissioner and granted the claim for refund. The Tax Commissioner has appealed.

Nucor Steel is a division of a Delaware corporation. Nucor is engaged in the business of making and selling steel and steel products, and its primary place of business is in Norfolk, Nebraska. The personal property upon which the taxes in this case were imposed consists of graphite electrodes used by Nucor in the steel-making process. The electrodes are cylindrical, approximately 16 inches in diameter and 72 inches long. Each electrode weighs approximately 875 pounds and is composed solely of graphite. The electrodes cost $726 each.

Nucor manufactures steel in electric arc furnaces.

Scrap metal is deposited in the arc furnaces in the meltdown phase of the process and three electrodes are lowered into the furnace and electricity is run through them to form an arc between the electrodes and scrap metal, creating tremendous heat which melts the scrap. When the scrap metal is completely melted, the electrodes are swung away and another load of scrap deposited into the furnace and melted. Four loads or "charges" are melted in one "heat," totaling approximately 50 tons.

The second stage of the process is the refining stage. During this stage of the process the electrodes are immersed in the liquid slag, which forms a cap on the molten metal underneath, and the electric arc continues to discharge, raising the temperature of the molten metal and adding carbon. Sufficient carbon must be present to create a "carbon boil" which agitates the molten metal so that impurities rise to the surface and become part of the slag. During this phase critical components of the steel are added and the metal is tested several times to insure they are present in the proper proportions. Carbon is the most important of the critical ingredients in steel. The graphite electrodes are virtually pure carbon.

At this stage of the process if it is determined that the carbon content is low, carbon is added by one of three methods. If the deficiency is small, crushed electrode material from broken electrodes which has been previously salvaged is directly added. Carbon coke is used if crushed electrode material is not available. If the deficiency is substantial, the electrodes are lowered into the molten bath and allowed to dissolve. If carbon in excess of specifications is present at this point in the refining stage, oxygen is introduced into the furnace to remove the excess carbon by the formation of carbon dioxide.

At the end of the refining process the slag is poured off and the molten steel continuously cast

into water-cooled molds where it hardens in the form of steel billets. Approximately 80 percent of the steel Nucor produces is cast to customer's specifications as to the content of carbon, manganese, phosphorus, and sulphur. The carbon content is the most important ingredient of the four and is the main strengthening agent in steel.

Nucor's finished steel product contains from .08 percent to 1 percent carbon, depending upon the customer's specifications. The average Nucor steel product contains approximately .25 percent carbon. Nucor's Norfolk plant produces an average of 23,000 tons of steel per month. Based on the electrodes used and the amount of steel produced in the year of the hearing, Nucor's electrodes are used at the rate of 10 pounds per ton of steel cast. The electrodes are used in a continuous-feed process. During the steel-making process carbon is added in several ways and an undetermined amount of carbon is present in the scrap metal, which may vary from .08 percent to 1 or 2 percent carbon. Carbon from the electrodes oxidizes during the meltdown stage, most of which escapes as gas. During the meltdown stage, pieces of the electrodes break off and fall into the furnace. Small pieces are allowed to remain in the molten bath and dissolve. Larger pieces are removed, crushed, and used as a carbon source in the refining stage. Through a chemical reaction during the refining stage carbon passes directly from the electrodes into the molten steel.

It is undisputed that the graphite electrodes are not a fuel and that part of the electrodes becomes a component of the finished steel product. The electrodes both conduct electricity and supply carbon to the product. One of the expert witnesses for Nucor testified that 54.5 percent of the carbon from the electrodes enters the steel during the manufacturing process. That percentage does not reflect the oxidation of the electrodes that occurs during the melt-

down process and escapes as gas, which cannot be measured. The 54.5 percent figure reflects the total amount of carbon from the electrodes which enters the steel during the process, although the part remaining in the finished product may be less if carbon content has to be reduced at the end of the refining stage.

An expert for the Tax Commissioner doubted the accuracy of those figures and expressed the view that a larger amount of carbon is oxidized during the carbon boil and released as carbon dioxide. He conceded, however, that there was no way to determine the exact amount of gases which escape.

Graphite electrodes are the common type of electrode used in electric arc furnaces. Various metals are all better conductors than graphite, but graphite electrodes are used by Nucor because they are the most economical, contribute carbon to the steel, and are the most readily available. If metal electrodes were used or if the electrodes did not introduce carbon into the steel, it would be necessary to add carbon from another source.

On September 22, 1978, Nucor filed its claim for refund of state and local use taxes paid on its purchase and use of graphite electrodes in its manufacturing process. At the formal hearing before the Tax Commissioner the claim was amended to cover the period from September 1, 1975, through July 31, 1978, in the amount of $141,795.46. On December 21, 1978, the Tax Commissioner denied the claim. He found that under Neb. Rev. Stat. § 77-2702 (Reissue 1981), a taxable use had been made of the electrodes because of "the complete use of them in the steel-making process as conductors in the electric arc furnace." He found that the question of whether the electrodes entered into or became an ingredient or component part of the steel was immaterial because it would not change the taxable nature of the use of them as part of the furnace in the production of steel. The

commissioner also found that some percentage of the carbon from the electrodes did enter into and remain a part of the finished steel product. This percentage, he found, was not shown with any accuracy but might vary from a de minimis amount to over 50 percent.

On appeal the District Court found that the graphite electrodes were used so that carbon therefrom did enter into and become an ingredient and component part of the finished steel product. The District Court also found that it was not necessary that the sole or only purpose for use of the electrodes was incorporation in the end product and that the electrodes used by Nucor were used for two purposes or functions, both of which were significant and not merely incidental. The District Court reversed the decision of the Tax Commissioner and entered judgment for the plaintiff for the refund sought. The Tax Commissioner has appealed.

Neb. Rev. Stat. § 77-2703(1) (Reissue 1981) imposes a tax "upon the gross receipts from all sales of tangible personal property sold at retail in this state . . . ." Section 77-2703(2) imposes a use tax on the "storage, use, or other consumption in this state of tangible personal property purchased, leased, or rented from any retailer . . . for storage, use, or other consumption in this state . . . ."

The statutory definitions of "sale at retail," "storage," and "use" specifically do not include "tangible personal property which will enter into or become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail." See § 77-2702(11)(a), (17), and (20).

The Tax Commissioner maintains that the primary function of the graphite electrodes is to generate heat to melt metal and that they are a part of manufacturing equipment. He contends that although at least a part of the electrodes enters into

and becomes an essential ingredient and component part of the processed steel, and meets the express term of the statute, that fact is immaterial because the purpose of providing carbon is only incidental.

Both parties rely on *American Stores Packing Co. v. Peters,* 203 Neb. 76, 277 N.W.2d 544 (1979). In that case this court held that the cellulose casings used in the manufacture of skinless frankfurters did not become an ingredient or component part of the finished product. This court found that the casings served the indispensable function of a mold and the fact that some portion of glycerin was transferred into the finished product, which already contained glycerin, was incidental. This court specifically upheld the Tax Commissioner's determination that the cellulose casings in that case did not enter into or become an ingredient or component part of the meat products involved. We distinguished steel processing cases in which the property involved was an essential component that entered into the chemical process of making steel.

In many cases differences in the statutory definitions make comparisons difficult. However, *Boswell v. Abex Corporation,* 55 Ala. App. 477, 317 So. 2d 314 (1975), *cert. denied* 294 Ala. 334, 317 So. 2d 317, involved the identical steel manufacturing process and issues which are involved in the case at bar. The Alabama use tax statute was almost identical to the Nebraska statute. It excepted tangible personal property or products "which enter into and become part of" the finished product. The Alabama court held that purchases of graphite electrodes were not subject to the tax because the graphite became an ingredient or component part of the manufactured product, regardless of whether the providing of graphite was the dominant purpose of the purchase of such property or not. The Alabama court held that "the crucial test is whether a part of the carbon electrode becomes an ingredient or component part

of the manufactured product, and clearly and without dispute it does." *Id.* at 480, 317 So. 2d at 317.

In *Robertson & Associates (Ala.), Inc. v. Boswell,* 361 So. 2d 1070 (Ala. 1978), the Alabama Supreme Court restated the test on the basis of whether the manufacturer used the material with the intent and purpose of making it an ingredient or component part of the finished product or whether its presence in the finished product was merely incidental to its primary function. The Alabama court did not directly pass upon the issue of whether or not a primary purpose of the use of graphite electrodes was to supply carbon, but rested its decision on the fact that the graphite electrodes were intended to become an ingredient or component part of the finished product and were within the specific language of the statute, regardless of the proportionate amount of carbon which remained in the finished product.

Texas, with a similar statutory provision, has also followed the Alabama court in its determination. See *Bullock v. Lone Star Industries, Inc.,* 584 S.W.2d 386 (Tex. Civ. App. 1979).

The cases cited by the Tax Commissioner are distinguishable because the taxed substance was only incidentally added to the final product rather than being an essential ingredient or component part of the finished product. In the case at bar the testimony is undisputed that carbon is an essential ingredient of steel and that the graphite electrodes involved here conduct electricity and supply carbon to the finished product, and were used for both purposes. There is also testimony that 54.5 percent of the graphite electrodes enters the steel during the manufacturing process. It is equally clear that the entire substance of the graphite electrodes involved here either enters into and becomes an ingredient or component part of the finished steel or is consumed in the process of manufacturing.

Some state statutes except not only property which enters into and becomes a component part of the finished product but also except property used or consumed in the manufacturing process, thus creating a form of dual primary purposes. See, *Shoe Corp. v. Kosydar,* 41 Ohio St. 2d 68, 322 N.E.2d 668 (1975); *Emery Indus. v. Kosydar,* 43 Ohio St. 2d 34, 330 N.E.2d 686 (1975).

On the facts in the present record the trial court correctly determined that the graphite electrodes were used in this case for two primary purposes and functions and that a substantial amount of the graphite electrodes entered into and remained an ingredient and component part of the finished steel product. The electrodes involved here were within the specific terms of the statute and we see no reason to read into the statute a requirement that a majority of the substance used must remain in the finished product in order to make the purpose of its use primary. There is no justification for holding that the purpose of using a substance which is an essential and critical ingredient of the finished product is not a primary and important purpose simply because there is also another reason for using the substance which is also important. It is tacitly conceded that if the graphite involved here was used in a form other than an electrode, it would not be subject to tax. The fact that the same substance can serve an additional purpose in the manufacturing process if it is in the form of an electrode does not change the factual reality or the terms of the tax statute.

Where graphite electrodes are used in the manufacture of steel for the dual purpose of providing essential carbon for the steel manufacturing process and for the conduction of electricity which provides heat for the process, and where a substantial part of the graphite electrodes enters into and becomes an essential ingredient or component part of the fin-

ished steel and the remainder is consumed in the manufacturing and refining process, the use of such graphite electrodes in the manufacturing and processing of steel for ultimate sale at retail is not subject to taxation under the provisions of §§ 77-2702 and 77-2703.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.