NUCOR STEEL, A DIVISION OF NUCOR CORPORATION, A DELAWARE
CORPORATION, APPELLANT, V. M. BERRI BALKA, TAX
COMMISSIONER OF THE NEBRASKA DEPARTMENT OF REVENUE, AND
STATE OF NEBRASKA, APPELLEES.

507 N.W.2d 499

Filed October 26, 1993.    No. A-92-257.

Tim O'Neill and V. Gene Summerlin, of Harding & Ogborn, for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

CONNOLLY, IRWIN, and WRIGHT, Judges.

WRIGHT, Judge.

Nucor Steel appeals the judgment of the district court which affirmed the order of the Tax Commissioner of the State of Nebraska dated May 17, 1991. The order denied Nucor's petition to abate two deficiency assessments and to grant a refund claim of Nebraska sales and use tax on Nucor's purchase and use of mill rolls and billet guides. Nucor claims such

tangible property is exempt from sales and use tax pursuant to Neb. Rev. Stat. § 77-2702(10)(a), (11)(a), and (20) (Reissue 1990).

## SCOPE OF REVIEW

■ When a petition seeking review of an agency decision is filed in the district court on or after July 1, 1989, the appeal shall be taken in the manner provided by law for appeals in civil cases. The judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record. Neb. Rev. Stat. § 84-918 (Cum. Supp. 1992).

■ An appeal from a decision by the Tax Commissioner of the State of Nebraska is governed by the Administrative Procedure Act. *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989).

■ In reviewing a law action, the appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. See *Anderson v. Transit Auth. of City of Omaha*, 241 Neb. 771, 491 N.W.2d 311 (1992).

## FACTS

Nucor filed its petition in the Lancaster County District Court requesting the court to vacate the order of the Nebraska Department of Revenue (Department) and to order a refund of sales and use taxes of $28,720.74 plus interest. Tax Commissioner M. Berri Balka and the State of Nebraska were named as the respondents. Nucor alleged that between May 1, 1985, and May 31, 1990, it purchased and used in its manufacturing process several types of mill rolls and billet guides which it claimed were exempt from state sales and use tax because the mill rolls and billet guides enter into or become an ingredient or component part of tangible personal property manufactured for ultimate sale at retail or are purchased for resale in the regular course of Nucor's business.

In 1988, the Department issued Nucor two notices of deficiency determination. Nucor protested the assessments and filed a claim for overpayment of sales and use tax related to the

purchase and use of the mill rolls and billet guides. The Department's order denied Nucor's protest and its refund claim. The hearing officer found that the mill rolls and billet guides purchased and used by Nucor did not qualify as ingredient or component parts of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail, making them subject to the state sales and use tax. The hearing officer also found that the mill rolls and billet guides purchased and used by Nucor were not exempt from sales and use tax as being a "sale for resale."

The district court affirmed the hearing officer's findings and adopted the findings as its own. The Tax Commissioner's order, which dismissed the protest and denied the refund claim, was affirmed by the district court. Nucor assigns as error the district court's affirmance of the Department's determination that the mill rolls and billet guides used by Nucor are not exempt from sales and use tax.

Nucor manufactures steel products in its plant, which is referred to as a "minimill" because it purchases and remelts scrap metal in an electric arc furnace. Nucor purchases its scrap metal through a dealer and also uses "obsolete home scrap," which is generated internally during the process of making steel.

The process begins when scrap is placed into an electric arc furnace until the furnace's capacity is reached. Carbon electrodes are lowered into the furnace and electricity passes through the electrodes forming an arc. The heat generated by the arc melts the scrap metal. During the second phase, lime is added to remove undesirable elements. The lime and these elements form slag that rises to the top of the molten bath. Other elements may then be added to complete the process.

The molten steel is poured from the furnaces into billets, which are long pieces of steel with a square cross section measuring $5^{1}/_{4}$ inches on each side. During the process, the billet is reduced and shaped into the finished product in the rolling mill, which consists of a series of machines called mill stands. Each mill stand holds a pair of mill rolls, which are cylindrical pieces of iron. Shapes or grooves, which are called passes, are cut on the surface of the iron by a turning lathe. Two

mill rolls are mounted on each mill stand, and the steel billet passes between the two mill rolls. The shapes which are cut into the mill rolls correspond so that the steel billet takes on the shape of the passes as it goes through the mill rolls. To reduce the steel billet to the shape and size of the desired product, the billet is run through a series of mill stands. The mill rolls have passes which progressively reduce the billet to the desired shape and size. Billet guides are used on either side of the mill rolls to guide the steel so that it passes between the mill rolls in the proper place.

During this process, the mill rolls and billet guides are worn away by the rolling of the steel, which involves pressure, friction, and heat. Mill rolls and billet guides are made of iron, and they oxidize as they are exposed to air, a process which occurs quickly under extreme heat. During the oxidation, pieces break off and the mill roll passes and billet guides become worn. The high temperature of the mill roll also causes "firecracking," or the creation of small cracks on the surface, and small pieces of the mill roll break away.

As the mill rolls wear away, the passes become worn and lose their shape. This requires that the mill roll be removed and the passes be machined back to their original shape on a turning lathe. Material is removed from the mill roll until the passes again have the proper shape. The process is repeated until the diameter of the mill roll reaches the size where it can no longer be properly adjusted and the diameter no longer exceeds the necks on the mill rolls. When this point is reached, the wornout mill rolls and billet guides are placed in a scrap pile which Nucor eventually uses as part of its source of iron for making steel. The turnings from the lathe are also placed in the scrap pile for future use in the furnace.

The hearing officer found that the value of the mill rolls was in their use to roll steel, not as scrap. The value of the mill rolls as scrap represented 2 to 3 percent of the initial purchase price of the mill rolls. The billet guides were even more expensive than the mill rolls, and their value as scrap was an even smaller percentage of their value as billet guides. If the mill rolls or billet guides were defective, they were used as scrap and the supplier was paid only for their scrap value.

Customers purchasing the steel are provided with a chemical analysis of the steel as it exists in the ladle before it is rolled. The hearing officer concluded that any material which was added to the product after that point would not be considered an essential ingredient or component part of the steel. The hearing officer determined that the mill rolls were purchased almost exclusively for their ability to roll steel and that the billet guides were purchased almost exclusively based on their ability to guide the steel through the mill rolls.

## ANALYSIS

Neb. Rev. Stat. § 77-2703(1) (Cum. Supp. 1992) imposes a sales tax upon a taxpayer's gross receipts that stem from all retail sales of tangible personal property sold in Nebraska. A use tax is imposed by § 77-2703(2) upon the storage, use, or other consumption in Nebraska of tangible personal property purchased, leased, or rented from any retailer.

Nucor contends its purchase of mill rolls and billet guides is exempt from sales and use tax because the mill rolls and billet guides are resold in the regular course of Nucor's business. Sales for resale are specifically exempt from sales and use tax. "Retail sale or sale at retail shall mean: (a) A sale for any purpose other than for resale in the regular course of business of tangible personal property." § 77-2702(10)(a). Section 77-2702(20) excludes from the definition of use "the sale of that tangible personal property in the regular course of business or the exercise of any right or power over tangible personal property which will enter into or become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail."

Section 77-2702(14) defines sale for resale as

> a sale of tangible personal property to any purchaser who is purchasing such tangible personal property for the purpose of reselling it in the normal course of his or her business, either in the form or condition in which it is purchased or as an attachment to or integral part of other tangible personal property.

The Nebraska "Sales and Use Tax Regulations" provide:

> The test of a sale at retail is whether . . . the sale is to a

purchaser for use or consumption and not for resale, either in the form or condition in which it was purchased or made over, or changed into, or included in some form of tangible personal property for resale. Sales of property to manufacturers . . . are not considered to be sales at retail, but are considered to be sales for resale to the extent that such property or its reduced component substances are resold or incorporated into tangible personal property which is sold.

316 Neb. Admin. Code, ch. 1, § 006.03 (1986).

At the beginning of our analysis, we note that the mill rolls and billet guides are used as part of the rolling mill operation and that when they can no longer function in this capacity, because they consist of iron, they become part of the scrap metal, are ultimately melted down, and become part of the billets in Nucor's manufacturing of steel. It is not disputed by the parties that the mill rolls and billet guides ultimately become an ingredient in Nucor's products. Part of the mill rolls and billet guides are incorporated as an ingredient in the steel or incorporated as scale, which Nucor collects and sells to a cement company. It is because of this use and incorporation into products which are ultimately sold to·third parties that Nucor contends that the mill rolls and billet guides are exempt from the Nebraska sales and use tax.

We first address Nucor's contention that the mill rolls and billet guides are exempt because they are purchased for resale. Section 77-2702(14) requires that the property be purchased "for the *purpose* of reselling it." (Emphasis supplied.) The burden is on Nucor to establish that it is entitled to an exemption from taxation. Statutes concerning an exemption from taxation are to be strictly construed, and therefore, the claimant who seeks an exemption. must establish the entitlement. *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989).

Nucor maintains that one of its purposes in buying the mill rolls and billet guides is for their use as scrap. The hearing officer found that Nucor's choice as to the type of mill rolls to purchase was based on the durability of the mill rolls relative to the cost, measured in terms of the amount of steel which could

be rolled at a given cost. The differences in iron content in the types of available mill rolls was found to be so minimal that such a consideration did not appear to be a real factor in the choice of the mill rolls purchased by Nucor.

The hearing officer found that a portion of the mill rolls and billet guides form scale, which is produced during the steel-making process. Scale, composed primarily of iron oxide, is an unavoidable result of the process in which iron exposed to air and water at high temperatures oxidizes and forms scale. The oxide is not strongly bonded to the iron surface on which it forms, and the high temperature and friction in the rolling process cause scale to flake off the surface of the billets, mill rolls, and billet guides. Scale rolled into the surface of the steel product is considered undesirable, and Nucor eliminates scale on the products by high-pressure spraying of the scale into a trough. The scale is collected and sold to a third party for use as an ingredient in cement products, which are then sold at retail. Scale must be collected and removed as it accumulates around the machinery and conveyor system. This collection and removal is necessary, even if the scale is not sold. During the years of the assessments and the refund claim, the scale was sold at prices between $14 and $23 per ton. In order to sell the scale, it must be dried and screened to eliminate large pieces. The entire process consists of washing the scale into a sluice system, collecting it in a sump, removing it, drying it, and screening it.

A chemical analysis of the steel is made when the steel is still in the ladle before it is rolled. The hearing officer stated that material added to the steel after this point is, therefore, not considered an essential ingredient or component part. The hearing officer found that Nucor did not purposely change mill rolls and billet guides into scale, as the company wanted to use the mill rolls for as long as possible. Durability is a major factor in selecting the mill rolls, and the scale which originates with the mill rolls is a major factor in the wearing away of the mill rolls and billet guides.

The hearing officer determined that Nucor's reasons for purchasing the mill rolls and billet guides are almost exclusively for their ability to roll steel and guide the steel during the steelmaking process. Their value is in rolling steel, not as scrap.

Wornout mill rolls and billet guides are used as scrap and become an ingredient or component part of the finished steel product only after they are no longer usable as mill rolls and billet guides. The transformation of mill rolls and billet guides into scale is an undesirable but unavoidable process over which Nucor has little control. The scale is collected out of necessity, but then is resold at a price which represents only a small fraction of the cost of the major component. No materials from the mill rolls or billet guides are incorporated as essential ingredients of the steel product during the rolling process.

An appeal from a decision by the Tax Commissioner of the State of Nebraska is governed by the Administrative Procedure Act. *Nucor Steel v. Leuenberger, supra.* A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record. § 84-918.

In reviewing this action, we consider the evidence most favorably to the successful party and resolve evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. See *Anderson v. Transit Auth. of City of Omaha*, 241 Neb. 771, 491 N.W.2d 311 (1992). We hold that the district court did not err in affirming that Nucor did not purchase mill rolls or billet guides for the purpose of resale, which would exempt the property from sales and use tax. Nucor did not satisfy the requirement of § 77-2702(14) that the mill rolls and billet guides be purchased for the purpose of resale.

We next address Nucor's argument that the purchase and use of mill rolls and billet guides are exempt from sales and use tax because they will enter into and become an ingredient or component part of the tangible personal property manu-factured, processed, or fabricated for ultimate sale at retail. The ingredient or component part exemption has been the subject of several Nebraska cases. In *American Stores Packing Co. v. Peters*, 203 Neb. 76, 277 N.W.2d 544 (1979), the court held that cellulose casings used in the manufacture of skinless meat products, e.g., frankfurters, did not become an ingredient or component part of the finished product and therefore were subject to a use tax. The casings contained glycerin, part of

which migrated into the meat as the casings were used to shape the meat product. The casings were removed and discarded after being used to shape the product. The court held that the presence of the glycerin was incidental and that the glycerin was not an essential ingredient of the final product.

In *Nucor Steel v. Herrington*, 212 Neb. 310, 322 N.W.2d 647 (1982), a portion of the electrodes used in the casting of steel became a component of the finished steel product. The court found that the carbon from the graphite electrodes entered into and became an essential ingredient and component part of the finished steel. The electrodes served two functions: They formed an arc which was used to melt and refine scrap into steel products, and they added essential carbon to the steel as they broke off or were intentionally lowered into the melt. The court found that it was not necessary that the sole purpose of the electrodes was their incorporation into the end product. The court stated that where a substantial part of the graphite electrodes entered into and became an essential ingredient of the finished steel and the remainder was consumed in the manufacturing and refining process, the use of the graphite electrodes in the manufacturing and processing of steel was not subject to taxation.

In *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989), refractories, which served as an insulating and protecting barrier for equipment that was exposed to the high temperature of molten steel, were sought to be exempted from taxation. The refractories did not melt from the heat used to make molten steel, but they wore away, deteriorated, and had to be replaced when they no longer served as effective insulators. As the refractories wore away from the walls of the manufacturing equipment, they fell into the slag, which is a substance made up of impurities extracted during refining. The remaining refractories which were no longer adequate as insulators were also removed and placed in the slag pile. The slag consisted of lime, impurities from scrap metal, and the refractory material. After iron was removed from the slag pile, some of the slag was sold as a substitute for gravel.

Some of the refractory material ended up in scale and "bag dust." Scale was sold to a manufacturer. Its value came from the

iron oxide of the scale, not from the refractory material. Bag dust, which contained minute pieces of refractory material, was sold or given away for use in fertilizer. The value of bag dust was attributed to zinc and iron, not the refractory material.

Nucor argued that because almost all of the refractories were eventually present in slag, scale, or bag dust, the refractories were exempt from tax because they became an ingredient or component part of tangible personal property manufactured for ultimate sale at retail and that the refractories were purchased for use in resale.

The court held:

> [M]aterial which only accidentally or incidentally becomes incorporated into a finished product and which is not an essential ingredient of the finished product is subject to sales and use tax because such material is not an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail.

*Id*. at 872, 448 N.W.2d at 914.

Here, the mill rolls and billet guides are used as scrap only after they no longer have value in the steel rolling process. Nucor obtains scrap from a number of other sources, so the availability of mill rolls and billet guides is not crucial to the steelmaking process. Nucor seeks to exempt the purchase price of the mill rolls and billet guides while they are used as such and does not seek to exempt the value of the mill rolls and billet guides as scrap metal when they are used as a component of the steel. The distinction is material to our decision in this case. As a source of raw material for the steel, the mill rolls' value as an ingredient or component part of steelmaking represents only 2 to 3 percent of the purchase price for the mill rolls.

We believe that in our review of the sales and use tax, the claim of an exemption must be considered in a reasonable and practical manner. If we accept Nucor's argument that the mill rolls are made of metal, which is a component of steel, and therefore the use of wornout mill rolls and billet guides as scrap metal makes their purchase price exempt from taxation, all metal products purchased in connection with the manufacture of steel would be exempt from taxation, provided the

manufacturer ultimately melted the product and resold it as steel. Trucks and other steel equipment used for transportation of the raw materials to the furnace, upon being exhausted for this purpose, could be thrown into the melting pot as a component of the steel and therefore could be claimed to be exempt from taxation.

The problem of applying broad general rules to the taxation process is readily apparent. The purchase price of any material thrown into the melting pot which becomes an ingredient of the finished product would be exempt from taxation as a component part. Thus, the use of a limousine as an ingredient of the molten steel would exempt the purchase price of the automobile from taxation. This would be true if the limousine transported the president of the company to work and later became a component of the steel when the car's bumpers, fenders, and engine were melted into a new steel creation. With such an outcome, the company could exempt the purchase price of any item which became a component part of the newly manufactured steel.

■ The determination of an exemption must be made on the facts of each case. We hold in this case that tangible personal property which is purchased and used as an essential ingredient or component part in the condition in which it was originally purchased should be exempt from taxation. Tangible personal property which is purchased and originally used for a different purpose than as an essential ingredient or component part of steel manufacturing, but which is later used as an ingredient or component part of the steel only after its use for its original purpose has been exhausted should be subject to sales and use tax.

Nucor's mill rolls and billet guides are used as scrap and become an ingredient or component part of Nucor steel only when their usefulness as mill rolls and billet guides has been exhausted. Such use is no different than the truck which hauled the scrap to the plant and was later used as scrap metal after its primary purpose had been exhausted. The mill rolls and billet guides are not purchased for their value as scrap, but are purchased for their use in the steelmaking process. The value of the finished product, steel, is not obtained because the

substances in the mill rolls and billet guides are melted to become a component part of the steel. The presence of the mill rolls and billet guides is incidental to the final product, and the purchase price of the mill rolls and billet guides is not exempt from taxation.

The burden is on Nucor to establish that it is entitled to the exemption from taxation. See *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989). Nucor has failed to meet that burden. The district court did not err in affirming the Department's order dismissing Nucor's protest and denying its claim for refund. We find that the district court correctly affirmed the finding of the hearing officer that the mill rolls and billet guides are not exempt from Nebraska sales and use tax. The judgment of the district court is affirmed.

AFFIRMED.