LACKAWANNA LEATHER COMPANY, APPELLEE,
V. NEBRASKA DEPARTMENT OF REVENUE,
STATE OF NEBRASKA, APPELLANT.

608 N.W. 2d 177

Filed March 31, 2000.    No. S-98-1121.

Don Stenberg, Attorney General, and L. Jay Bartel for appellant.

Samuel E. Clark, of Erickson & Sederstrom, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

### NATURE OF CASE

The Nebraska Department of Revenue (Department) appeals from an order of the Lancaster County District Court, which reversed the decision of the State Tax Commissioner and ordered that Lackawanna Leather Company (Lackawanna) was

entitled to a refund of sales and use taxes paid on particular solvents used in dying leather. The district court concluded that the solvents were exempt from sales tax pursuant to Neb. Rev. Stat. § 77-2702.13(2)(a)(i) (Supp. 1999) and Nebraska Sales and Use Tax Regulation 1-023, 316 Neb. Admin. Code, ch. 1, § 023 (1994), which exempt from sales and use taxes that property which enters into and becomes an ingredient or component part of property manufactured, processed, or fabricated for ultimate sale at retail. The question presented is whether the district court erred in finding that the solvents purchased by Lackawanna and added to the dyes used to color its leather products are an essential ingredient or component part pursuant to § 77-2702.13(2)(a)(i) and regulation 1-023 and are therefore exempt from sales and use taxes. For the reasons that follow, we conclude that the solvents do not fall within the § 77-2702.13(2)(a)(i) exemption and therefore reverse the decision of the district court and remand the cause with directions to affirm the order of the Tax Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Lackawanna tans and finishes animal hides and sells the finished leather to other manufacturers. After receiving the hides from various sources, Lackawanna removes the hair from the hides and prepares them for tanning. The hides are soaked in a chemical mixture that breaks down the inner-fiber structure and allows the hide to absorb the necessary chemicals. Lackawanna then uses machines to split the top leather from the bottom half of the hide, called split leather.

The refund claim at issue relates to the processing of the top leather. Once the top leather is removed, it is tanned. The first step in tanning is to shave the hides to a uniform thickness and weight. Dyes and sulfuric acids are added to the hides to preserve them; these dyes and acids become permanently bound to the leather. Oil is then added to the leather. The leather is placed in a tumbler to dry and to smooth.

During the finishing stage, the leather is cured, colored, and dried. Lackawanna purchases the pigments used to color the leather in a highly concentrated form. The pigments cannot be used in the purchased form and must be mixed with a number of

additives to color the leather. Lackawanna purchases the pigments in this concentrated form because it allows for a smaller inventory; by adding different types of chemicals in differing amounts to the same pigment, different colors and shades of leather can be made.

Four chemicals used in the coloring process are the subject of this refund claim: Barsol A-3472, Barsol A-3423, Barsol A-3408, and Cyclohexanone. Barsol A-3472 is a solvent thinner that is mixed with the dye and is then applied as a spray, along with the top color coat of paint. It is added as a liquid solution to the paint, and it acts as a carrier for other solutions applied to the leather. Barsol A-3423 is similarly a solvent thinner, used as a carrier for solvent-phase urethane, nitrocellulose, butyrate, emulsions, and pigments. It is essential to the finished spray application for even distribution of components in the spray and to ensure intercoat adhesion of the paint. The third chemical, Barsol A-3408, is a solvent thinner that is necessarily added to the pigments to aid in the even distribution of the paint and the intercoat adhesion of the paint. Finally, Cyclohexanone is used in the finishing application to prevent water hazing due to high relative humidity. During the processing, almost all of these four particular chemicals evaporate, but trace amounts of each chemical remain on the finished leather products. However, the amount of each of the four chemicals added to the pigment is to impart the coloring to the leather, and not to change the amounts of residual chemicals found on the finished leather.

On November 29, 1994, Lackawanna filed a claim for overpayment of sales and use tax, in the amount of $21,437.13, for the period February 1, 1988, through December 31, 1991. Lackawanna asserted that the solvents used in the manufacture of paint should be exempt because they constituted a component part of the paint.

On February 28, 1995, the Tax Commissioner notified Lackawanna that its claim was incomplete because documents showing that Nebraska sales tax had been paid were not attached. Lackawanna did not respond. On March 29, the Tax Commissioner again alerted Lackawanna of the purported insufficiency of its claim and informed it that if the requested information was not received within 15 days, the claim would be

denied. Lackawanna did not provide the requested information, and its claim was denied on May 22. Lackawanna then filed a petition for review in the Lancaster County District Court, and on November 14, 1996, the court remanded the refund claim back to the Tax Commissioner for a determination of the merits of the claim.

On October 30, 1997, the Tax Commissioner denied Lackawanna's claim for overpayment of Nebraska sales and use tax, stating that Lackawanna "has not shown that the solvents become 'an ingredient or component part' of the finished leather products, and therefore the solvents are subject to tax." Pursuant to Neb. Rev. Stat. § 84-917 (Cum. Supp. 1998), Lackawanna filed a petition for review in the Lancaster County District Court. A hearing was held, and on September 16, 1998, the district court reversed the decision of the Tax Commissioner and granted Lackawanna's request for a refund. In its order of reversal, the district court stated:

> When the hide processing is completed the solvents are gone and the only trace of their existence is absorbed in the final product to be sold. The solvents are an essential part of the final product in that without their being absorbed into the hide, the paint or dye would not transfer and adhere.

The district court noted that its analysis was influenced by the admission of the Department that if the solvent had been added by the paint manufacturer and then purchased by Lackawanna, the entire amount of the paint product would be exempt. The district court concluded: "[Lackawanna] has established its entitlement to an exemption for those solvents which are mixed with color pigment to create paint or dye which is then applied to its final leather good products. Another conclusion would be arbitrary, capricious and inconsistent."

The Department timely filed an appeal of the district court's order with the Nebraska Court of Appeals. We moved this case to our court pursuant to our authority to regulate the caseloads of this court and the Court of Appeals. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

The Department alleges that the district court erred in finding that the solvents purchased by Lackawanna and added to dyes

used to color leather products became essential ingredients or component parts of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail and that the solvents were therefore exempt from Nebraska sales and use tax.

## STANDARD OF REVIEW

An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, ante* p. 24, 607 N.W.2d 857 (2000).

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *Id.* A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Id.*; *Father Flanagan's Boys' Home v. Agnew*, 256 Neb. 394, 590 N.W.2d 688 (1999).

When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra.*

In instances where we are required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Constructors, Inc. v. Cass Cty. Bd. of Equal.*, 258 Neb. 866, 606 N.W.2d 786 (2000). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Lyman-Richey Corp. v. Nebraska Dept. of Rev.*, 258 Neb. 908, 606 N.W.2d 813 (2000).

## ANALYSIS

We initially note that some of the statutes and regulations relevant to this appeal have been amended over the course of the audit period. The parties have not presented any argument regarding these amendments, and we have determined that these changes do not affect our analysis of the instant appeal.

Therefore, we will cite to the current statutory and regulatory language for the sake of simplicity and convenience. See *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, supra.*

█ The general theory behind the sales and use taxes is to impose a tax on each item of property, unless specifically excluded, at some point in the chain of commerce. If the item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies. *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 459 N.W.2d 519 (1990). Nebraska statutes provide for several exemptions to these taxes; without these exemptions, some materials would be taxed twice, once in their original condition and once when incorporated into a final product. See *id.*

█ Section 77-2702.13(2)(a)(i) is one such exemption and excludes from the definition of "retail sale" the sale of "[p]roperty which will enter into and become an ingredient or component part of property manufactured, processed, or fabricated for ultimate sale at retail." Nebraska Sales and Use Tax Regulation 1-023 further clarifies § 77-2702.13(2)(a)(i). Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. See, *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998); *Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997). Thus, regulation 1-023, 316 Neb. Admin. Code, ch. 1, § 023, guides our analysis and provides:

023.01 Property that becomes an ingredient or component part of a product manufactured, processed, assembled, or fabricated for sale by the purchaser is exempt. Property that is necessary for production but which does not become an ingredient or component part of the product sold is taxable.

023.02 To qualify as exempt the property must meet all of the following conditions:

023.02A The property must physically or chemically enter into and remain a part of the finished product;

023.02B The property must be an essential ingredient or component of the finished product; and

023.02C The finished product must be a product that was manufactured, processed, or fabricated for sale by the purchaser of the ingredient or component part.

. . . .

023.05 Not all sales of property or products to manufacturers, processors, or fabricators are exempt. The property or products which are consumed by them in manufacturing or processing, but which do not become an ingredient or component part of the article, substance, or commodity manufactured, processed, or fabricated, are taxable. The manufacturer, processor, or fabricator is the final buyer or ultimate consumer of such property or product, and the sale to the manufacturer, processor, or fabricator is a taxable sale. Similarly, the purchase of equipment and supplies is taxable. They do not enter into the processing of, and do not form a part of the product sold.

Lackawanna claims that the solvents purchased and used by it qualify for the ingredient and component part exemption and that the partial evaporation of the solvents is not relevant because "[o]nce the paint is produced the solvent remains an integral part particularly with regard to its application to the product." Brief for appellee at 9. The Department, on the other hand, asserts that the exemption is not satisfied because although a trace amount of the solvents remains on the finished leather, there is no indication that any of the solvents actually become a part of the leather goods. The Department argues, "There is no evidence that any of the solvents enter into and become a **part** of the finished leather product, let alone an **essential** part of the finished leather product." Brief for appellant at 16.

An exemption from taxation is never presumed. *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999). The burden of showing entitlement to a tax exemption is on the applicant. *Id.* Since a statute conferring an exemption from taxation is strictly construed, one claiming an exemption from taxation of the claimant or the claimant's property must establish entitlement to the exemption. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995).

We have been called upon to interpret § 77-2702.13(2)(a)(i) on a number of occasions. In *American Stores Packing Co. v. Peters*, 203 Neb. 76, 277 N.W.2d 544 (1979), a taxpayer

protested use taxes imposed on the sale of casings used in the manufacture of its skinless meat products. We framed the issue as "whether the casing is used so that it 'will enter into or become an ingredient or component part' of the finished meat product and thus not subject to the use tax." *Id.* at 77-78, 277 N.W.2d at 545. We summarized the use of the casing as follows:

> In the course of manufacture of the skinless meat products, the casing is utilized in the following fashion. It is stuffed mechanically with the prepared meat product. The casing, after being tied in segments, then moves onto a conveyor belt and is subjected to a series of processes . . . . The testimony is that, during the vinegar shower, an undetermined amount of the glycerine with which the casing is impregnated, moves by osmosis from the casing into the meat and penetrates the meat slightly. At the end of the process, the [casing] is without economic value and is discarded.

*Id.* at 78-79, 277 N.W.2d at 546. Testimony established that the glycerine and the moisture in the casing made the cellulose more manageable. Further, the glycerine permitted the casing to be peeled easier from the product, coated the outer surface of the product, improved its appearance, and increased its shelf life. Significantly, there was already glycerine contained within the meat product; therefore, it would be difficult to determine the amount of glycerine moving from the casing to the meat. We determined that the casing was not exempt from taxation:

> In the case before us, the casing served the apparently indispensable function of a mold. In the end, the casing is discarded. It does not become an ingredient or component in any real sense, as it does not reach the ultimate consumer of the meat product. If one judges solely by the physical evidence, i.e., a sample of unused casing and a sample of used casing, the answer seems almost obvious. The casing remains after the manufacture. The principal function of the glycerine and moisture is to enable the casing to serve its function. The transfer of some part of the glycerine into meat which already contains glycerine appears incidental.

*Id.* at 83, 277 N.W.2d at 548.

The reasoning of *American Stores Packing Co.* controls the instant case. As in *American Stores Packing Co.*, we focus on

the function of the solvents. The various solvents have different functions: Barsol A-3472 acts as a carrier for other solutions applied to the leather, Barsol A-3423 facilitates even distribution of the finish spray and ensures good intercoat adhesion of the paint, Barsol A-3408 aids in even distribution of the paint and the intercoat adhesion of the paint, and Cyclohexanone is used in the finishing application to prevent water hazing due to high relative humidity. Additionally, the parties stipulated that the amounts of the solvents mixed with the pigment were added "to impart the coloring to the leather, and not to change the amounts of residual chemicals found on the finished leather products sold by [Lackawanna]." These stipulated facts point to one conclusion: The solvents perform an essential function in the *processing* of the leather, as the casings in *American Stores Packing Co.* served the important function during the shaping process, but the solvents do not serve any purpose in the finished leather product. Rather, their presence on the finished leather product is incidental, just as the glycerine presence in the skinless meat products was incidental in *American Stores Packing Co.*

In *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 459 N.W.2d 519 (1990), the taxpayer printing company protested the assessment of a use tax on the developing fluid used and sales tax on the sale of the prepress materials to its customers. In concluding that the taxpayer was not entitled to an exemption, we noted:

> Interstate uses items of prepress . . . not to supply the image but, rather, to *convey* the "ingredient-component part" image through the process to the finished printed product. . . . Use of the prepress items to convey the image is somewhat analogous to use of the cellulose casings at issue in *American Stores Packing Co. v. Peters* . . . as a mold in the manufacture of skinless meat products. Like the cellulose casings, each item of prepress is merely an instrumentality or utensil used in the process and is not property being incorporated into the product.

*Interstate Printing Co. v. Department of Revenue*, 236 Neb. at 120-21, 459 N.W.2d at 526. We also rejected Interstate's argument that the prepress items and developing fluid "enter into" the final product in an economic sense and were therefore

exempt because "Nebraska's statutory scheme does not exclude from taxation material necessary to or consumed in the manufacturing process but which does not actually enter into the final product as an ingredient or component part." *Id.* at 121, 459 N.W.2d at 527.

    *Interstate Printing Co.* also directs that the solvents at issue are not within the meaning of § 77-2702.13(2)(a)(i). As in *Interstate Printing Co.*, where the prepress items and developing fluid were an instrumentality to convey an image (the ingredient-component part), the solvents are an instrumentality to convey the dye to the leather. Although the district court seemed troubled by the Department's admission that if the solvent had been added by the paint manufacturer and then purchased by Lackawanna, the entire amount of the paint product would be exempt, we are guided by the legislative distinction set forth in § 77-2702.13(2)(a)(i). The paint product is an essential part of the finished leather product, but the solvents themselves are not; they serve as an integral part of the manufacturing process, but not the finished leather product. The solvents are necessary for production, but that is not enough, for regulation 1-023 specifically provides that "[p]roperty that is necessary for production but which does not become an ingredient or component part of the product sold is taxable." 316 Neb. Admin. Code, ch. 1, § 023.01.

    In *Nucor Steel v. Herrington*, 212 Neb. 310, 322 N.W.2d 647 (1982) (*Nucor I*), we affirmed the district court's judgment of a refund, but *Nucor I* is readily distinguishable. In *Nucor I*, the taxpayer steel company claimed entitlement to a refund for use taxes paid on its purchase of graphite electrodes used in its steel manufacturing. The graphite electrodes had two purposes: to conduct electricity during the manufacturing process and to supply carbon to the finished product. In affirming the district court's judgment of a refund, we stated:

        Where graphite electrodes are used in the manufacture of steel for the dual purpose of providing essential carbon for the steel manufacturing process and for the conduction of electricity which provides heat for the process, and where a substantial part of the graphite electrodes enters into and becomes an essential ingredient or component part of the

finished steel and the remainder is consumed in the manu-
facturing and refining process, the use of such graphite
electrodes in the manufacturing and processing of steel for
ultimate sale at retail is not subject to taxation . . . .

*Id.* at 318-19, 322 N.W.2d at 651. In *Nucor I*, the graphite elec-
trodes both were used in the process of manufacturing steel and
were an essential part of the finished product; in the instant case,
however, the solvents do not have dual purposes in the process
and in the finished product. Rather, their usefulness is only in
the manufacturing process, not the finished product. Thus,
*Nucor I* is inapplicable.

*Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d
909 (1989) (*Nucor II*), involved a steel manufacturer who
claimed entitlement to a sales and use tax refund for its refrac-
tory materials. The refractory materials were used to insulate
equipment from damage by exposure to extremely high temper-
atures necessary for steel manufacturing. Some of the refractory
material would wear away and fall into the slag, scale, and bag
dust, all items which the steel company sold. Nucor claimed the
refractory materials were within the "ingredient or component
part" exemption, but we rejected its claim:

From *American Stores Packing Co. v. Peters, supra*, and
*Nucor Steel v. Herrington, supra*, the principle evolves that
material which only accidentally or incidentally becomes
incorporated into a finished product and which is not an
essential ingredient of the finished product is subject to
sales and use tax because such material is not an ingredi-
ent or component part of tangible personal property manu-
factured, processed, or fabricated for ultimate sale at retail.

*Nucor II*, 233 Neb. at 872, 448 N.W.2d at 914.

The instant case is similar to *Nucor II*, for trace amounts of
the solvent incidentally become incorporated into the finished
leather product. The principles set forth in *Nucor II*, and its pre-
decessors, make clear that this incidental incorporation is not
sufficient to exempt the solvents from taxation.

Lackawanna claims that *Vulcraft v. Balka*, 5 Neb. App. 85,
555 N.W.2d 344 (1996), resolves the issue of whether the sol-
vents are "essential components." We disagree. In *Vulcraft*, the
Court of Appeals held that processing oils which coated outer

surfaces of steel bars and remained on finished steel products were component parts and therefore exempt. The Court of Appeals reasoned:

> The processing oils serve two distinct and important purposes. First, they act as a lubricant, safeguarding the steel bar *during processing* and also the machines used *to process* the bars. Second, they function as a rust inhibitor, *protecting the processed bar from corrosion until* Metkote can be applied. It is undisputed that the *processing oils are essential during the manufacturing process*, as moisture in the air causes fresh metal surfaces to rust almost immediately if not sufficiently protected. The essential nature of immediate rust protection is shown by the evidence that the product will not meet the customers' specifications and needs if damaged by rust after processing. Furthermore, it is not determinative that the processing oils may no longer serve as a rust preventative once Metkote is applied. *If the oils are not applied during processing*, the finished steel bar, which is manufactured for its precision, may very well contain defects and be altogether unacceptable to the customer. Thus, we can reach no other conclusion except that the oils are an essential component of the bars.

(Emphasis supplied.) *Id.* at 94-95, 555 N.W.2d at 349.

Even though *Vulcraft* is distinguishable because the processing oils remain on the finished steel bars, while most of the solvents in the instant case evaporate and are not on the finished leather product, we nonetheless believe that the Court of Appeals reads the component or ingredient exemption too broadly; therefore, we briefly address the issue to avoid unnecessary confusion in the future. As previously discussed, to qualify as exempt, the property must, inter alia, physically or chemically enter into and remain a part of the product and be an essential ingredient or component of the finished product. Regulation 1-023, § 023.02. Although the processing oils were important during processing and remained on the finished steel bars in *Vulcraft*, they would not have been an essential ingredient or component part of the steel bars. Regulation 1-023, § 023.01, clearly states that not all sales to manufacturers and the like are exempt; rather, those products which are consumed

in the processing and which do not become an ingredient or component of the final product are taxable. Thus, to the extent that *Vulcraft v. Balka, supra*, can be read to mean that a property need only be essential during the manufacturing or processing of the final property to be exempt under § 77-2702.13(2)(a)(i), it is hereby disapproved.

In the instant case, the solvents used to impart the coloring to the leather are not component parts of the finished leather product under § 77-2702.13(2)(a)(i) where most of the solvents evaporated during processing and only a trace amount remained on the leather's surface. The trace amount of solvent which remains on the surface of the leather does not justify an exemption.

## CONCLUSION

The solvents at issue are not exempt from taxation, and accordingly, we reverse the judgment of the district court and remand the cause with directions to affirm the decision of the Tax Commissioner.

REVERSED AND REMANDED WITH DIRECTIONS.